**STATE of Missouri, Respondent,**

v.

**Steven Jerome WHITE, Appellant.**

**No. 52810.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 14, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 1988.

Application to Transfer Denied
Sept. 13, 1988.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for respondent.

Holly G. Simons, Asst. Public Defender, St. Louis, for appellant.

SIMON, Presiding Judge.

Appellant, Steven J. White, appeals his convictions in this court tried case in the Circuit Court of the City of St. Louis for eight counts of robbery in the first degree, § 569.020 RSMo (1986) (hereinafter, all further references shall be to RSMo (1986) unless otherwise noted), eight counts of armed criminal action, § 571.015, and two counts of tampering in the first degree, § 569.080. On appeal, appellant contends the trial court erred: (1) in allowing evidence and statements obtained through a

search conducted without probable cause and without valid consent; and, (2) in denying appellant's motion to sever offenses because appellant was prejudiced by trying all the charges together. We affirm.

The evidence viewed in the light most favorable to the verdicts is as follows: On July 3, 1985, appellant entered a tavern owned by Mildred Poole called "Millie's Place," located in the City of St. Louis. He displayed a handgun and announced a hold up. After Ms. Poole emptied the safe and cash box, he also took the money in the cash register. Thereafter, he ordered the tavern's customers to put their money, wallets, and jewelry on the bar, collected the property, and herded the victims into the bathrooms at gunpoint. He ordered one of the victims to give his automobile keys to appellant. He fled in the victim's automobile. Ms. Poole identified appellant from a police mugshot book, at a lineup, and at trial.

On January 3, 1986, appellant entered Wilkins–Riedmann & Associates, an architectural firm located in the City of St. Louis. Once again, he displayed a handgun and announced a robbery. He ordered the victims into a back conference room, told them to place their valuables on a table, and took their money, wallets, and jewelry. He ordered all but one of the victims into a bathroom at gunpoint. He ordered the remaining victim to give his automobile keys to appellant and to assist appellant in carrying the property to the victim's automobile. Among the items taken were a computer keyboard, monitor, printer and disc drive.

On January 8, 1986, Robert Hughes, an employee of Computer Catalog Sales received a telephone call requesting information and operations manuals for the components of a Zenith 158 computer system, the same system that was taken in the Wilkins–Riedmann robbery. The information was to have been sent to one Demarco Knox at 1111 South Tucker, Apartment 508. Mr. Hughes was aware of the robbery at Wilkins–Riedmann and suspected a possible connection between the telephone call and the robbery. He called Wilkins–Ri-edmann and informed them of the call. Later, the police contacted Mr. Hughes.

Subsequently, police detectives went to Apartment 508 at 1111 South Tucker, which was leased to Ophelia Richardson. Ms. Richardson and her two sons, Antonio and Demarco Knox, were listed as occupants. Upon arriving at the apatment, the detectives knocked on the door and appellant answered. The detectives identified themselves and asked if Ms. Richardson was home. Appellant invited them inside the apartment. Appellant sat quietly on a couch with one of the detectives while the other detectives explained to Ms. Richardson why they were there and produced a consent to search form. The form contains two parts; the upper portion establishes that consent is given to search the premises and the lower portion acknowledges specific items seized. The blank spaces in the form had not been completed when it was presented to Ms. Richardson. However, the form was fully explained to and, thereafter, executed by Ms. Richardson. She told the detectives that appellant had brought some computer equipment to the apartment recently and she led the detectives to the rear bedroom of the apartment and directed their attention to the computer and other pieces of computer equipment. The detectives also found items of jewelry which had been taken in the Wilkins–Riedmann robbery, as well as a handgun, later identified as the gun used in the Wilkins–Riedmann robbery. Thereafter, appellant was advised of his constitutional rights and was detained for further investigation.

Upon arriving at the police station, one of the detectives typed Ms. Richardson's name and address and the names of the other detectives present on the top portion of the consent to search form and the items which were seized on the bottom portion of the form. Appellant was placed in a lineup and identified by several of the Wilkins–Riedmann robbery victims. He was promptly arrested and again advised of his constitutional rights. Later, Mildred Poole positively identified appellant as the robber at her tavern. He was charged with that robbery, as well, and was re-advised of his constitutional rights.

**366**

Appellant made the following oral statement in regard to the Wilkins–Riedmann robbery: "I wouldn't have got caught if I didn't make that phone call and give my address." As for the robbery at Millie's Place, appellant made an oral and a written statement amounting to a confession.

Appellant and four defense witnesses testified to the effect that he had been living in California on January 3, 1986, the date of the Wilkins–Riedmann robbery.

The trial court found appellant guilty of all eighteen counts and sentenced appellant to a total of one hundred years imprisonment after finding him to be a prior offender.

In his first point on appeal, appellant contends that the trial court erred in overruling his motions to suppress evidence, identifications, and statements because they were the fruits of an illegal search made without a warrant and without valid consent. Appellant maintains that Ms. Richardson's consent was illegally obtained because she signed the consent to search form before it was completed. Also, consent was not freely obtained, but was the "result of the inherently coercive environment created by the presence of four police detectives in her apartment."

A warrantless search or seizure is valid under the fourth amendment if made with proper voluntary consent. *State v. Blair*, 638 S.W.2d 739, 750[8] (Mo. banc 1982). In order to establish consent, the state must prove by a preponderance of the evidence that: (1) the person giving the consent did so voluntarily; and, (2) she had the authority to do so. *State v. Cole*, 706 S.W.2d 917, 918[2] (Mo.App.1986).

Whether there was voluntary consent is to be determined by the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973). That determination is dependent on many factors including, but not limited to, the number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in police custody,

whether there was any fraud or misleading on the part of the officers, and the evidence as to what was said and done by the person consenting. *State v. Blair*, 638 S.W.2d at 750[10].

Reviewing the totality of the circumstances, we conclude that Ms. Richardson voluntarily consented to the search. Testimony from the four detectives who went to Ms. Richardson's apartment reveals that the blank consent to search form was fully explained to and executed by her prior to the search. There were four detectives present when Ms. Richardson gave her consent. The detectives were not hostile in making their request. No weapons were displayed. The detectives candidly explained their presence and Ms. Richardson not only gave them permission to search the apartment, but assisted them, as well, by telling them which room contained the computer equipment. Viewing all of the circumstances surrounding the giving of this consent, we find the state has proven by a preponderance of the evidence that the consent was voluntarily given.

It is uncontroverted that Ms. Richardson signed the lease for the apartment and resided there with her two sons. Further, the record indicates that appellant was a temporary guest of Ms. Richardson at the time of the search and did not contest the search of the apartment.

The requisite consent to search may be given by a third party who possesses "common authority" over the premises or effects. *U.S. v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 250 (1974). The Court in *Matlock* explained the term "common authority" as follows:

Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the

inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

(Citations omitted). *Id.* at n. 7. Furthermore, it has been held that a host/hostess can consent to a search of his/her premises occupied by a guest, *U.S. v. Buckles*, 495 F.2d 1377, 1381[9] (8th Cir.1974), and that when the target of a search is present and remains silent while consent is being solicited and consent is given by a third party, the consent is valid. *U.S. v. Canada*, 527 F.2d 1374, 1379[8] (9th Cir.1975), *cert. denied*, 429 U.S. 867, 97 S.Ct. 177, 50 L.Ed.2d 147 (1976).

■ Since appellant had the opportunity to object to the search but did not do so, he has validly relinquished his expectation of privacy in the property. *See* 1 W. Ringel, *Searches & Seizures, Arrests and Confessions,* § 9.5(f) (release #13, November, 1987). Clearly, Ms. Richardson possessed the requisite authority to consent to the search. Thus, appellant's motions to suppress evidence, identifications, and statements were properly denied as they were not the fruits of an illegal search. Point denied.

In his second and final point on appeal, appellant claims the trial court erred in denying his motion to sever offenses. Appellant's argument presents two distinct points for review. The first issue that must be addressed is whether the offenses were properly joined. Assuming that proper joinder exists, the second issue is whether the trial court abused its discretion in refusing to sever the offenses and ordering them tried in a single prosecution. *State v. Harris*, 705 S.W.2d 544, 547[1] (Mo.App. 1986). Joinder is either proper or improper under the law while severance is discretionary. *State v. Smith*, 682 S.W.2d 861, 863[1] (Mo.App.1984).

The statute authorizing joinder of offenses is § 545.140(2) which provides as follows:

Notwithstanding Missouri supreme court rule 24.07 [1986], two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or infractions, or any combination thereof, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Supreme Court Rule 23.05 (1986) provides: *Misdemeanors or Felonies–Indictment or Information–Joinder of Offenses*

All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

■ A defendant in a criminal case does not have a federal or state constitutional right to be tried on only one offense at a time. *State v. Bextermueller*, 643 S.W.2d 292, 295[9] (Mo.App.1982). Liberal joinder of criminal charges is favored in order to achieve judicial economy. *State v. Smith*, 682 S.W.2d at 863[4]. In determining whether joinder is proper, we consider only the state's evidence. *State v. Clark*, 729 S.W.2d 579, 581[5] (Mo.App.1987). For joinder to be proper, the manner in which the crimes were committed should be so similar that it is likely that the same person committed all the charged offenses. *State v. Clark*, 729 S.W.2d at 581[2]. Similar tactics are sufficient to constitute acts "of the same or similar character" under § 545.140(2). *State v. Harris*, 705 S.W.2d at 550[3]. In order to find a "common scheme or plan" under Rule 23.05, the offenses charged must be the product of a single or continuing motive. *State v. Allen*, 674 S.W.2d 606, 607[1] (Mo.App.1984).

■ This case involves two separate robberies. The facts in both incidents, however, are very similar: in both robberies the robber, a thin, black male, displayed a handgun and announced a robbery; in both robberies the robber ordered the victims to put their money, wallets, and jewelry onto the bar and table; the robber,

thereafter, collected the property and herded his victims into the bathroom(s) at gunpoint; finally, in both robberies the robber ordered one of the victims to hand over his automobile keys and the robber fled in the vehicle. Clearly, these facts tend to establish acts of similar character and a common scheme or plan. Therefore, joinder was proper.

The next question is whether the trial court erred in not severing the offenses. Section 545.885(2) provides as follows:

If it appears that a defendant or the state is substantially prejudiced by a joinder of the offenses for trial, upon a written motion of the defendant or the state and upon a particularized showing of substantial prejudice, the court may grant a severance of offenses or provide whatever relief justice requires. For purposes of this section, "substantial prejudice" shall mean a bias or discrimination against the defendant or the state which is actually existing or real and not one which is merely imaginary, illusionary or nominal.

Rule 24.07 further provides:

*Misdemeanors or Felonies–Severance of Offenses*

When a defendant is charged with more than one offense in the same indictment or information, the offenses shall be tried jointly unless the court orders an offense to be tried separately. An offense shall be ordered to be tried separately only if:

(a) A party files a written motion requesting a separate trial of the offense;

(b) A party makes a particularized showing of substantial prejudice if the offense is not tried separately; and

(c) The court finds the existence of a bias or discrimination against the party that requires a separate trial of the offense.

When, as here, offenses are properly joined, we reverse the denial of a severance only upon a showing of both an abuse of discretion and a clear showing of prejudice. *State v. Allen*, 674 S.W.2d at 607–08[3].

In deciding whether to grant a motion to sever, the trial court weighs the benefits of trying the offenses simultaneously and thereby saving judicial time against the potential prejudice to the defendant. *State v. Sanders*, 714 S.W.2d 578, 585[2] (Mo.App.1986). In assessing prejudice the court should consider, among other relevant factors, the number of offenses charged, the complexity of the evidence to be offered, and whether the trier of fact is able to distinguish the evidence and apply the law intelligently to each offense. *State v. Clark*, 729 S.W.2d at 583[10].

The evidence in this case was not complex; it consisted primarily of the victims' and the detectives' direct testimony. Certainly, the trial judge, as trier of fact, is able to distinguish the evidence and apply the law intelligently.

Appellant argues that he was prejudiced because he wanted to testify with regard to an alibi defense for the charges involving the Wilkins–Riedmann robbery, but he wanted to invoke his Fifth Amendment right against self-incrimination for the charges involving the Millie's Place robbery. We fail to see the prejudice of which appellant complains. Appellant did, in fact, testify regarding an alibi for the Wilkins–Riedmann robbery, and successfully invoked his Fifth Amendment rights when cross-examined on the Millie's Place robbery. We find that appellant has failed to carry the burden imposed upon him by § 545.885(2) and the trial judge did not abuse his discretion by denying appellant's motion to sever. *State v. Harris*, 705 S.W. 2d at 551–52[4]. Point denied.

Judgment affirmed.

CRANDALL and GRIMM, JJ., concur.