**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Dennis OLDS, Defendant–Appellant.**

**Dennis OLDS, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–
Respondent.**

**Nos. 56551, 59346.**

Missouri Court of Appeals,
Eastern District,
Division Three.

May 5, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 9, 1992.

Application to Transfer Denied
July 21, 1992.

David C. Hemingway, Cathy Rene Kelly, James Stewart McKay, St. Louis, for appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for respondent.

STEPHAN, Judge.

Dennis Olds appeals his convictions, after a four day jury trial, of: (1) four counts of forcible rape, Section 566.030, RSMo 1986; (2) two counts of felonious restraint, Section 565.120, RSMo 1986; (3) one count of kidnapping, Section 565.110, RSMo 1986; (4) two counts of armed criminal action, Section 571.015, RSMo 1986; (5) one count of sodomy, Section 566.060.2, RSMo 1986; (6) one count of second degree assault, Section 565.060, RSMo 1986; and (7) one count of stealing over $150.00, Section 570.-

030, RSMo 1986. Additionally, Olds appeals the denial of his Rule 29.15 motion for post-conviction relief, after two evidentiary hearings. We have consolidated Olds' two appeals, pursuant to Rule 29.15(*l*). We affirm in part, reverse in part and remand with instructions.

The evidence adduced at trial, in the light most favorable to the verdict, is as follows. On July 11, 1987, shortly after 4:00 p.m., victim Patrice was walking east on Washington Avenue, when a car suddenly pulled up beside her. Olds got out of the car and approached victim Patrice with his pants unzipped. Although Patrice began to run, Olds caught her and pushed her into a doorway. Patrice was screaming and crying, hoping to attract the attention of any car going down Compton. None, however, stopped. As Olds grabbed Patrice, he held on to his back pocket, stating: "[s]hut up or I'll kill you." Olds thereafter put victim Patrice in a headlock and pulled her down a gangway. Victim Patrice briefly escaped. She attempted to run down the gangway, which she thought was an alleyway—a way out. The gangway, however, was bricked in, leaving Patrice with no avenue of escape. Olds grabbed a bottle or a brick, and again warned victim Patrice to be quiet or he would kill her. Olds, thereafter, pushed Patrice face down and pulled down her stockings and underwear. Olds attempted to penetrate Patrice. Unsuccessful in his attempt, he ordered Patrice to place his penis in her vagina. Patrice complied, while Olds licked her face. After raping Patrice, Olds stood up and asked Patrice how much money she had in her possession. He thereafter instructed Patrice: "[d]on't get up until I'm gone." Olds subsequently got into his vehicle and drove off.

Patrice attempted to straighten her clothes, removing the pieces of torn stockings, which she left at the scene. She then walked home, called her sister and summoned the police. When the police arrived, they asked if she could take them back to the crime scene. Patrice did so. Additionally, she gave the officers a description of Olds. The officers, thereafter, took Patrice to Barnes Hospital, where doctors examined her.

About two weeks later, on July 29, 1987, at approximately 9:15 p.m., victim Monnette was walking down Kingshighway, on her way to work. Monnette noticed that a man, Olds, was following her. When Monnette turned around to see how close Olds was to her, he grabbed her by the arm, pulled out a knife, and told her to walk with him without saying anything. While holding her at knife point, Olds instructed victim Monnette to walk up a driveway and lay face down on the grass. Olds attempted to penetrate Monnette's vagina with his penis, but he was unable to enter. Olds ordered victim Monnette to turn over, whereupon he penetrated her vagina with his penis. After Olds raped Monnette, he went through her purse and apparently took something. Olds told Monnette to be quiet. He then left the scene.

Monnette walked down the street and called the police. When the police arrived, Monnette gave them a description of Olds. Monnette then led police to the rape scene. Thereafter, the police drove Monnette to her house, where she met her mother. Police took both Monnette and her mother to Children's Hospital, where doctors examined Monnette.

Almost three months later, on October 23, 1987, at approximately 1:30 p.m., victim Ovaloretta was walking down Labadie on her way to look at an apartment. Ovaloretta had her then one year old daughter with her. As Ovaloretta bent down to tie her daughter's shoe, Olds approached her from behind and put a jacket over her head. Olds told her not to scream or he would hurt the child. Not believing him, Ovaloretta fought and screamed for help. Olds pushed Ovaloretta down to the ground. She then kicked him between the legs. In response, Olds pulled out a knife and cut Ovaloretta's chin. Ovaloretta again fought with Olds, however, Olds told her that if she did not stop, he would hurt her daughter. Ovaloretta, therefore, told Olds that she would do what he said. Olds ordered Ovaloretta to get up, take her daughter and enter a vacant building.

Olds removed the child's diaper, and placed her in what appeared to be the bottom part of a toilet. Olds then took off Ovaloretta's pants and, using one of her pants legs, tied her to a gas pipe that was sticking out of the floor. Olds removed her underwear and ordered her to lie on a cabinet that was on the floor. Olds, thereafter, placed his penis in Ovaloretta's vagina. He then forced his penis in her mouth. Turning Ovaloretta on her stomach, Olds attempted to place his penis in her anus. Unsuccessful at this attempt, he turned her over once more and again placed his penis in her vagina.

Olds held the knife on Ovaloretta during all of these events. He threatened to rape her daughter if she did not cooperate. Initially, Olds attempted to hide his face with a scarf. However, during the course of the sex acts, he placed the scarf over Ovaloretta's eyes so that she would not be able to see him. After the sex acts were completed, Olds removed the scarf, and instructed Ovaloretta not to look. Despite this instruction, Ovaloretta scanned Olds from head to toe. As Olds proceeded to leave, he told Ovaloretta to wait there five minutes and not to attempt to follow him.

After waiting a few minutes, Ovaloretta freed herself from the pipe, went to her daughter and put back on the child's diaper. She then went to a phone booth to call her mother. Ovaloretta's mother told her to come straight home. Ovaloretta did so, and called the police. When the police arrived, Ovaloretta gave them a description of Olds and then took them to the crime scene. The officers subsequently took Ovaloretta to Barnes Hospital where doctors examined her.

Finally, victim Valerie testified that the following events occurred on December 10, 1987. Sometime between 5:00 p.m. and 6:15 p.m., Valerie left her job and picked her son up from day care. After the two waited for a bus which had not yet come, victim Valerie decided that they would walk to a friend's place of employment to visit the friend. While walking down the street, a car suddenly pulled over, Olds exited the vehicle, grabbed Valerie's son

and put a gun to the child's head. Olds warned Valerie not to scream or he would kill her son. He then forced her into his car, whereupon he drove to a loading dock. Once there, Olds demanded that Valerie perform an act of sodomy on him. He then instructed Valerie to exit the vehicle. Once outside, Olds made Valerie lie down on a box, whereafter he penetrated her vagina with his penis. Olds subsequently forced her back into the car where he demanded her purse. Shortly thereafter, he ordered Valerie to take her son and get out of his car. Valerie took her son and exited the vehicle. She then began walking down the street, whereupon a man, with whom she was acquainted, stopped his automobile, picked her and her son up, and took them to Valerie's sister's house. When they arrived, Valerie called the police. Valerie subsequently accompanied the police to the rape scene. The police then took her to the hospital where doctors examined her.

Olds challenged Valerie's recitation of the above facts. Olds testified that the following events actually occurred. Valerie asked Olds to pick her up from work so that she could pay him some $350.00 that she owed him from a cocaine transaction. After picking Valerie up, the two went to Valerie's son's daycare center, where they picked him up. All three then went to White Castle. They subsequently drove to several houses so that Valerie could pick up debts that people owed her. The three eventually ended up at a motel where Valerie was to meet someone. Once at the motel, the three entered a motel room, where Olds and victim Valerie had consensual sexual intercourse. Olds, thereafter, took Valerie home, keeping her paycheck that he removed from her purse. At the close of evidence, instructions and arguments of counsel, the jury found Olds guilty of: (1) one count of rape and one count of kidnapping regarding Patrice; (2) one count of rape and one count of armed criminal action regarding Monnette; (3) two counts of rape, one count of forcible sodomy, two counts of felonious restraint, one count of second degree assault and one count of armed criminal action regarding Ovaloretta; and (4) one count of felony

stealing regarding Valerie. The jury acquitted Olds of one count of rape, one count of forcible sodomy, one count of first degree robbery and two counts of kidnapping regarding Valerie and her son.

On April 7, 1989, the court sentenced Olds, as a prior and persistent offender, to terms of: (1) seventy-five years for each of the four counts of rape; (2) seventy-five years for each of the two counts of armed criminal action; (3) seven years for each of the two counts of felonious restraint; (4) ten years for the one count of kidnapping; (5) ten years for the one count of sodomy; (6) seven years for second degree assault; and (7) seven years for felony stealing. The trial court ordered all sentences to run consecutively.

On April 13, 1989, Olds filed his Notice of Appeal. On August 14, 1989, Olds filed a *pro se* motion to vacate judgment and sentence pursuant to Rule 29.15. The trial court appointed the public defender's office to represent Olds on September 14, 1989. After one extension of time, Olds' counsel filed a verified amended motion on November 13, 1989. The trial court conducted hearings on Olds' Rule 29.15 motion on both January 26th and March 30th, 1990. On October 12, 1990, the trial court issued findings of fact, conclusions of law and order denying Olds' motion for post-conviction relief. Olds currently appeals from both his convictions and the denial of his Rule 29.15 motion.

Olds' first point on appeal is that the trial court erred in denying his objection to the joinder of all sixteen counts in one trial where the tactics used in the four incidents did not reveal the identifying signature of one person. If joinder was proper, we must then address Olds' second point: whether the trial court abused its discretion in refusing to sever the offenses and ordering them tried in a single prosecution. *State v. Sims*, 764 S.W.2d 692, 696 (Mo. App.1988). Joinder is either proper or improper under the law, while severance is within the trial court's discretion. *Id.*

Joinder addresses the more basic question of what crimes can be charged in a single proceeding, while severance presupposes proper joinder and leaves to the trial court's discretion the determination of whether prejudice may or would result if charges properly joined were tried together. *Id.*

Joinder is governed by Section 545.140(2), RSMo 1986, which provides as follows:

Notwithstanding Missouri supreme court rule 24.07, two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or infractions, or any combination thereof, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Joinder of more than one offense in a single indictment or information is also provided for in Supreme Court Rule 23.05 which states:

*Misdemeanors or Felonies—Indictment or Information—Joinder of Offenses*

All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

A defendant in a criminal case does not have a federal or state constitutional right to be tried on only one offense at a time. *State v. White*, 755 S.W.2d 363, 367 (Mo. App.1988). Liberal joinder of criminal charges is favored in order to achieve judicial economy. *Id.* In determining whether joinder is proper, we consider only the state's evidence. *Id.* For joinder to be proper, the manner in which the crimes were committed should be so similar that it is likely that the same person committed all

the charged offenses. *Id.* Similar tactics are sufficient to constitute acts of the same or similar character under Section 545.-140(2). *Id.* However, identical tactics are not required. *State v. Hughes*, 787 S.W.2d 802, 804 (Mo.App.1990). Tactics which resemble or correspond in nature are sufficient. *Id.* Moreover, in order to find a common scheme or plan under Rule 23.05, the offenses charged must be the product of a single or continuing motive. *State v. White*, 755 S.W.2d 363, 367 (Mo.App.1988).

Here, the acts committed against the victims Patrice, Monnette, Ovaloretta, and Valerie are clearly of the "same or similar character." All of the victims were between the ages of eighteen and twenty-seven, and were either alone or with a small child. Olds attacked each victim as she was walking down the street. Olds transported each victim to a more secluded area. He then partially disrobed each victim, removing only their pants, pantyhose, or underwear. In each instance, Olds released his victim only after he told them to wait a period of time as he left the scene. In the first, second and fourth incidents, Olds either inquired about money or took the victim's purse. In both instances where a child was present, Olds threatened to harm the child unless the victim did as she was instructed. In the second, third and fourth instances, Olds used a weapon to subdue his victims. The tactics used and choice of victim make it likely that the perpetrator was the same person. While each incident was not identical, they were sufficiently similar to allow joinder.

▮▮▮ The next question is whether the trial court erred in not severing the offenses. Section 545.885(2) provides:

If it appears that a defendant or the state is substantially prejudiced by a joinder of the offenses for trial, upon a written motion of the defendant or the state and upon a particularized showing of substantial prejudice, the court may grant a severance of offenses or provide whatever relief justice requires. For purposes of this section, "substantial prejudice" shall mean a bias or discrimination against the defendant or the state which is actually existing or real and not one which is merely imaginary, illusionary or nominal.

Rule 24.07 further provides:

*Misdemeanors or Felonies—Severance of Offenses*

When a defendant is charged with more than one offense in the same indictment or information, the offenses shall be tried jointly unless the court orders an offense to be tried separately. An offense shall be ordered to be tried separately only if:

(a) A party files a written motion requesting a separate trial of the offense;

(b) A party makes a particularized showing of substantial prejudice if the offense is not tried separately; and

(c) The court finds the existence of a bias or discrimination against the party that requires a separate trial of the offense.

When, as here, offenses are properly joined, we reverse the denial of a severance only upon a showing of both an abuse of discretion and a clear showing·of prejudice. *State v. White*, 755 S.W.2d 363, 368 (Mo. App.1988).

In determining whether to grant a motion to sever, the trial court weighs the benefits of trying the offenses simultaneously and thereby saving judicial time, against the potential prejudice to the defendant. *Id.* In assessing prejudice, the court should consider, among other relevant factors, the number of offenses charged, the complexity of the evidence to be offered and whether the trier of fact is able to distinguish the evidence and apply the law intelligently to each offense. *Id.*

In this case there were sixteen counts, but only four incidents. The facts relevant to each incident are not particularly complex and are distinct. The state's evidence consisted primarily of testimony from the victims, and expert opinion regarding the medical examination of the victims. The elements of each offense were clearly set out in the instructions. The court read the jury MAI–CR3d 304.12 which instructed them to consider each offense separately. There is nothing in the record to indicate that the jury was unable to distinguish the evidence or apply the law to each offense.

To the contrary, the jury acquitted Olds of: (1) raping victim Valerie; (2) sodomizing Valerie; (3) robbing Valerie; and (4) kidnapping Valerie and her son. This indicates that the jury understood the impropriety of boot-strapping one incident with the others. We find that Olds has failed to carry his burden. Absent a particularized showing of prejudice, the trial court cannot be found to have abused its discretion. Olds' first two points are, therefore, denied.

■■■ Olds' third point is that the trial court erred in denying his request for funds to retain a serologist to independently examine the rape kits and help the defense prepare to confront the state's serologist, Joseph Crow. Our supreme court has previously held that in the absence of statutory authorization, the accused in a criminal case is not entitled to have his expert witnesses summoned at public expense. *State v. Young*, 701 S.W.2d 429, 433 (Mo. banc 1985). The state is not constitutionally mandated to provide the accused with such services. *Id.* Whether to provide public funds to aid an accused in the preparation of his defense is within the trial court's discretion. *Id.*

There is no statute authorizing the expenditure of public funds for Olds to retain a serologist to refute the state's witness. Moreover, the need to refute Joseph Crow's testimony is questionable since Crow's results were less than conclusive. We are unable to say the trial court abused its discretion. Olds' third point is, therefore, denied.

■■■ Olds' fourth point is that the trial court erred in denying his motion for judgment of acquittal on the charge of kidnapping Patrice. Specifically, Olds contends that Patrice's assailant did not remove her from the sidewalk, but that instead, the two struggled in the doorway and that Patrice then broke away from him into a gangway in order to escape. Olds further contends that the struggle at the doorway near the gangway did not increase the danger from the initial assault on the sidewalk, and, therefore, fails to establish the crime of kidnapping as defined by Section 565.110, RSMo 1986, and the legislative comments thereto.

The offense of kidnapping is defined in Section 565.110, RSMo 1986:

> A person commits the crime of kidnapping if he unlawfully removes another without his consent from the place where he is found or unlawfully confines another without his consent for a substantial period, for the purpose of:
>
> (1) Holding that person for ransom or reward, or for any other act to be performed or not performed for the return or release of that person; or
>
> (2) Using the person as a shield or as a hostage; or
>
> (3) Interfering with the performance of any governmental or political function; or·
>
> (4) Facilitating the commission of any felony or flight thereafter; or
>
> (5) Inflicting physical injury on or terrorizing the victim or another.

As explained in *State v. Jackson*, 703 S.W.2d 30, 32–33 (Mo.App.1985), the offense of kidnapping should not be charged in instances where the movement or confinement is merely incidental to another offense. However, disallowing a kidnapping charge whenever another offense is committed would make subsection 4 of Section 565.110.1 meaningless. *State v. Erby*, 735 S.W.2d 148, 149 (Mo.App.1987).

In determining whether a defendant's actions of moving and confining his victim are incidental to another offense or are sufficient by themselves to constitute the offense of kidnapping, we must look to see if there was any increased risk of harm of danger to the victim from the movement or confinement that was not present as a result of the other offense. *Id.* Increased risk or harm or danger may arise either from the movement itself or from the potential for more serious criminal activity because of the remoteness or privacy of the area to which the victim was moved. *Id.* The time involved in the movement or the distance it covers are not the determining factors. *Id.*

Here, Patrice testified that as she was walking east on Washington Avenue, Olds approached her with his pants unzipped.

Although she attempted to run, Olds caught her and pushed her into a doorway. Olds subsequently put Patrice in a headlock and pulled her down a gangway. By moving Patrice down the gangway, Olds increased his ability to prolong the rape and make it more violent. He decreased the chance that there would be any witnesses to the attack and precluded victim Patrice's escape. The privacy acquired by moving the victim to a more secluded spot, although not far from where he accosted her, did significantly increase her risk of danger and injury. Whether or not the asportation or confinement of the victim necessary to commit the offense of kidnapping occurs depends on the facts of each case. *State v. Jackson*, 703 S.W.2d 30, 33 (Mo.App.1985). The facts in this case definitely support the kidnapping conviction.

Olds' fifth point on appeal is that the trial court erred in refusing to submit his instruction A, which reads as follows:

If you find and believe from the evidence that defendant was convicted of previous offenses, you may consider that evidence for the sole purpose of deciding the believability of the defendant and the weight to be given his testimony and for no other purpose. You must not consider such previous convictions as any evidence that the defendant is guilty of any offense for which he is now on trial.

The court excluded this instruction on the basis that it was not in the proper form suggested by MAI–CR in that it did not set forth the particular offenses to which Olds pled guilty or was convicted. The court accepted another form of the above instruction, Number 23, which Olds also offered. Instruction Number 23 reads as follows:

If you find and believe from the evidence that defendant pled guilty to the offenses of murder in the first degree and robbery in the first degree, and was found guilty of three (3) counts of indecent exposure, you may consider that evidence for the sole purpose of deciding the believability of the defendant and the weight to be given to his testimony and for no other purpose. You must not consider such previous convictions as any

evidence that the defendant is guilty of any offense for which he is now on trial.

Olds contends that the Instruction given unduly highlighted his prior convictions and undermined the intent of MAI–CR 3d 310.10 to ensure that the jury will not consider prior convictions as substantive proof of guilt.

If an applicable criminal instruction is provided by MAI–CR, it is mandatory that the court give the instruction as written. *State v. Snyder*, 748 S.W.2d 781, 785 (Mo. App.1988). When the proper instruction is given, an appellate court is powerless to declare it erroneous. *Id.* More specifically, the court has no authority to declare erroneous those instructions and their accompanying Notes on Use which have been adopted by the Supreme Court for standard use. *Id.* Here, the instruction given was modelled after the pattern instruction. The trial court, therefore, did not err since it acted in compliance with MAI–CR. Moreover, Olds' prior convictions were elicited on cross-examination. We fail to see how Olds could have been prejudiced by a reference to them in an instruction. Olds' fifth point is, therefore, denied.

Olds' sixth point is that the trial court erred in sentencing him to seventy-five year sentences on counts I, III, V and VI. Specifically, Olds contends that since in the course of committing the rapes he displayed a deadly weapon or dangerous instrument in a threatening manner, the convictions in those counts were for class A felonies. He further contends that as class A felonies, the maximum sentence that the trial court could impose for each conviction was a term of years not exceeding thirty or life imprisonment. Section 558.011.1(1), RSMo 1986. Olds' contentions are without merit.

The state charged Olds with the unclassified offense of forcible rape for each of the four counts, without reference to any of the aggravating conditions which would make the charge a class A felony. The verdict directing instructions similarly failed to indicate the use of a deadly weapon or dangerous instrument. Moreover, the court sentenced Olds to each count of

forcible rape without reference to the use of a deadly weapon or dangerous instrument. The particular offense for which a defendant is convicted is shown by the record with reference to the charge in the body of the information, the jury instructions, the wording of the verdict and any statements made by the court at sentencing. *Weeks v. State*, 785 S.W.2d 331, 333 (Mo.App.1990). Here, Olds cannot argue that he was convicted of four class A felonies, when the information, jury instructions, jury verdict and sentencing firmly establish that the jury convicted Olds of four counts of the unclassified offense of forcible rape.

Moreover, Olds' contention that he was sentenced in excess of the statutory maximum is incorrect. Section 566.030 states: "[f]orcible rape or an attempt to commit forcible rape as defined in subsection 1 of this section is a felony for which the authorized term of imprisonment, including both prison and conditional terms, is life imprisonment or a term of years not less than five years...." The trial court sentenced Olds to a term of years, not less than five, on all four counts. The trial court, therefore, did not err. Olds' point is denied.

Olds' seventh point is that the motion court erred in refusing to make findings of fact and conclusions of law regarding the claims raised in his verified amended motion. Olds also asserts that the motion court erred in failing to render findings of fact and conclusions of law on two *pro se* claims.

The state concedes that the motion court erroneously ruled that Olds' amended motion was unverified. The state further concedes that Olds' post-conviction motion should be remanded for findings of fact and conclusions of law for all of the claims contained in his amended motion. We agree. Accordingly, we reverse and remand with instructions to the motion court to enter findings of fact and conclusions of law, on all issues contained in Olds' amended motion, in accordance with Rule 29.15(i). *See Stanley v. State*, 786 S.W.2d 211, 212 (Mo.App.1990).

The motion court, however, did not err in failing to address two claims in Olds' *pro se* motion. The first claim that Olds argues which the motion court failed to address is that the trial court erred in failing to grant his request for DNA fingerprint analysis. The second claim is that the trial court erred in excluding defense witness, Johnie Peeler. Claims of trial court error are not cognizable in a Rule 29.15 motion except where fundamental fairness requires otherwise, and then, only in rare and exceptional circumstances. *Clemmons v. State*, 785 S.W.2d 524, 531 (Mo. banc 1990), *cert. denied*, — U.S. ——, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990). Olds demonstrates no exceptional circumstances here. Thus, the trial court did not err in failing to address these two *pro se* claims.

Finally, Olds' eighth point is that the motion court erred in not squarely addressing his claim that his trial counsel was ineffective in failing to strike jurors who said that they would have trouble hearing the case due to the number of charges advanced against him. Since: (1) this issue is raised in Olds verified, amended motion; and (2) we have remanded this case to the motion court to render findings of fact and conclusions of law on all issues presented in this verified, amended motion, we refrain from addressing this issue until the motion court has spoken.

For the reasons stated, we affirm in part, reverse in part and remand this case to the motion court for further proceedings consistent with this opinion.

PUDLOWSKI, P.J., and CRIST, J., concur.