STATE of Missouri, Respondent,

v.

John MEDER, Appellant.

No. WD 46501.

Missouri Court of Appeals,
Western District.

Nov. 16, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 28, 1993.

Application to Transfer Denied
March 22, 1994.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David B. Cosgrove, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and KENNEDY and LOWENSTEIN, JJ.

BRECKENRIDGE, Presiding Judge.

John Meder appeals from his conviction of three counts of class B rape under § 566.030, RSMo 1986,[1] for which he was sentenced to three consecutive terms of fifteen years imprisonment. Meder raises four points on appeal, arguing that the trial court erred in: 1) denying Meder's motion for severance and failing to sever the charge and trial of each of the three counts of rape; 2) admitting evidence of the victims' "sexual acting out" because any probative value the evidence may have had was clearly outweighed by its prejudicial impact; 3) failing to instruct the jury to disregard the prosecutor's improper closing argument or to declare a mistrial because the prosecutor improperly defined sexual intercourse to the jury; and 4) submitting Instruction No. 4, patterned after MAI–CR3d 302.04, because the definition of reasonable doubt violated Meder's right to due process.

Meder does not challenge on appeal the sufficiency of the evidence or the admission of evidence of uncharged crimes or prior bad acts testified to by the victims or others to whom the victims had made statements. Nevertheless, Meder's allegations of error require the recital of a substantial portion of the evidence. The evidence on appeal will be viewed in the light most favorable to the verdicts. *State v. Graham,* 587 S.W.2d 627, 629 (Mo.App.1979).

Meder is the father of three daughters, Doreen, Tina and Penny.[2] Doreen and Tina are twins who at the time of trial were eleven years old. Penny was nine years old at the time of trial. The record reveals a history of repeated sexual abuse by Meder of his three daughters. The record also indicates that Doreen, Tina and Penny had been touched and sexually abused by their adolescent uncles, Mike Woods and Steve Woods, and possibly others. The charges against Meder stem from three particular incidents of abuse in October of 1986. Doreen and Tina were five years old and Penny was either three

---

1. Section 566.030 was amended in 1990 and is no longer a class B felony but is now an unclassified felony with a punishment range of five years to life imprisonment. Section 566.030, RSMo Cum.Supp.1992.

2. The names of the children have been changed to protect their privacy.

years old or had just turned four years old at the time of the abuse that led to the charges in the instant case.

Doreen testified that in October of 1986, Meder took her downstairs at her grandparents' house and "got on top of me, and he put his penis in me." Doreen stated that Meder had engaged in similar contact with her on more occasions than she could count and that he told her he would kill her if she told anyone. Officer Robert Rogge interviewed Doreen in October of 1987. In describing Meder's sexual contact with her prior to her removal from his custody, Doreen described to Officer Rogge both vaginal and anal intercourse with Meder. Doreen told Christine Cannella, a therapist for the Metropolitan Organization to Counter Sexual Assault, that Meder touched her with his penis "in her front and back parts."

Tina testified that in October of 1986, two weeks before Penny's fourth birthday, Meder and Tina were alone at her grandparents' house. Meder told her it was too cold for her to play outside. Tina testified that she was playing in her uncles' room when Meder "came in and touched my private parts" and "put his penis in my vagina." Tina also testified that Meder touched her in this manner on many other occasions. Meder told Tina that he would kill her if she told anyone. Officer Gary Thurman interviewed Tina on October 27, 1987. Thurman testified that Tina told him that Meder inserted his penis in both her vagina and her rectum.

Steve Woods testified that he was present when a "hot line" call to the Division of Family Services was made on November 8, 1986. The call was made when Tina told the next door neighbors, the Batesons, that every Friday night after her mother went to work Meder would "get in bed, put Tina on top of him, and move her back and forth on top of his penis." Meder admitted to a juvenile officer in an interview after the children were removed for alleged sexual abuse that a teenage friend of the family had seen him holding Tina on a couch when they were both naked and he had an erection.

Penny testified that, when the family was living in a motel, Meder bothered her at bedtime when she was trying to go to sleep by touching her private parts. Penny stated that Meder touched her vagina with his penis more than once. Elizabeth Hutcheson, a caseworker employed by the Missouri Division of Family Services and assigned to the Meder case, testified that Penny spoke with her about incidents when Meder had sexually abused Penny and when Meder, Mike Woods and Steve Woods had raped Penny. Penny's foster mother, Phyllis Blowers, testified that Penny told her that Meder bathed the girls often and, when they were bathing, Meder touched their private areas. Penny also told Blowers that her father touched her rectum with his penis.

Officer Jana Rogge interviewed Penny. Penny told Officer Rogge that Meder put his "hot dog" in her "private" five times when they were in the basement of her grandparents' house. Penny told Officer Rogge that when this occurred her uncles, Mike Woods and Steve Woods, and her sisters were present. Penny said that Meder, Mike Woods and Steve Woods all put their "hot dogs" in her and her two sisters. MOSCA counselor, Cannella, testified that during counseling sessions Penny recounted a number of incidents when her father "put his hot dog" in her vagina and rectum. Penny told Cannella that she remembered a time near her birthday at her grandparents' house when Meder, Mike Woods and Steve Woods, in turn sexually abused her.

Doreen, Tina and Penny were removed from the home of their natural parents after the hotline report on November 8, 1986. They were placed in foster care on November 10, 1986. Due to severe behavioral problems the girls could not live together in the same foster home and were placed in separate foster homes. The testimony at trial showed that after their removal from Meder's custody, all three girls exhibited behavioral problems and incidents of "sexual acting out." The incidents of sexual acting out included masturbating and simulating intercourse in public and with other children and pulling their pants down and their shirts up in public. Doreen acted out by straddling men's legs in a sexual manner and rubbing her genitals against them. Penny would put her finger in her rectum when she became

angry and smear feces on herself and the walls. The girls also often exhibited aggressive, combative behavior and experienced nightmares.

Meder was indicted on March 8, 1989, for three counts of class B rape, § 566.030, RSMo 1986. In each count he was charged with having sexual intercourse with one of his three daughters between October 1, 1986 and October 31, 1986. Trial was held on January 21, 1992. The jury was unable to reach a verdict and the trial court declared a mistrial. The case was again called to trial on May 11, 1992 and the jury returned verdicts of guilty. In accordance with the recommendation of the jury, Meder was sentenced to three consecutive terms of imprisonment of fifteen years each. Timely notice of appeal was filed thereafter.

■ In Point I, Meder argues that the trial court erred and abused its discretion in denying his motion for severance of the three counts of rape under § 545.885, RSMo Cum. Supp.1992, and Rule 24.07. Meder contends that he was denied a fair trial in that he was substantially prejudiced by the trial court's refusal to sever.

■ Meder's contention of error requires a two-part analysis. *State v. Harris,* 705 S.W.2d 544, 547 (Mo.App.1986). The first issue is whether the offenses were properly joined. *Id.* Upon a finding that joinder was proper, the appellate court then considers whether the trial court abused its discretion by denying the motion to sever and trying the offenses in a single prosecution. *Id.*

■ Joinder involves the basic question of what crimes can be charged in a single proceeding as a matter of law, while severance assumes that joinder is proper and allows the trial court discretion to determine whether prejudice would result if the charges were tried together. *State v. Olds,* 831 S.W.2d 713, 718 (Mo.App.1992). "A defendant does not have either a federal or state constitutional right to be tried on only one offense at a time." *State v. Baker,* 524 S.W.2d 122, 126 (Mo. banc 1975). In a criminal case, liberal joinder is favored in order to achieve judicial economy. *Olds,* 831 S.W.2d at 718.

Joinder of offenses is governed by § 545.-140(2), RSMo 1986, which provides:

Notwithstanding Missouri supreme court rule 24.07, two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or infractions, or any combination thereof, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Rule 23.05 also provides for joinder of more than one offense in an information or indictment as follows:

All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

■ Joinder is proper if any one of the criteria in § 545.140(2), RSMo 1986, exists. *State v. Clark,* 729 S.W.2d 579, 582 (Mo.App. 1987), *cert. denied,* —— U.S. ——, 113 S.Ct. 1389, 122 L.Ed.2d 764 (1993). The criterion applicable to the case at bar is whether offenses are of "the same or similar character." It is not necessary that the tactics in committing the crimes be identical. *State v. Moore,* 745 S.W.2d 224, 227 (Mo.App.1987). "Tactics which resemble or correspond in nature are sufficient." *Id.* In order for joinder to be proper, the manner in which the crimes were committed must be such that the same person is likely to have committed all the charged offenses. *Olds,* 831 S.W.2d at 718–19.

The degree of similarity necessary for proper joinder is illustrated by the holdings in three recent cases. For example, in *State v. Vinson,* 834 S.W.2d 824, 827 (Mo.App. 1992), it was proper to join two offenses in one indictment when both offenses involved the robbery of a service station/food mart where defendant drew a revolver on the cashier, walked behind the counter, removed the cash drawer and fled from the store to a

waiting vehicle. In *Olds*, 831 S.W.2d 713, the Eastern District of this court found it proper to join, in one prosecution, sixteen counts including forcible rape, felonious restraint, kidnapping, armed criminal action, sodomy, and second degree assault arising from four incidents occurring between July 11 and December 10, 1987. The court found that the offenses were similar in that the four victims were women between the ages of 18 and 27 who, while walking down a street alone or with a small child, were accosted, threatened or had a child threatened with a dangerous instrument or a deadly weapon, taken to a secluded area, raped and then released. *Id.* at 719. In *State v. Forister*, 823 S.W.2d 504, 510 (Mo.App.1992), the circumstances of four robberies committed within St. Louis County within a three-week period were sufficient for joinder when in each instance defendant drove a red 1963 Chrysler as a getaway car for the same accomplice who displayed a gun and demanded money.

In the offenses charged against Meder the victims were his preschool daughters. Tina and Doreen were age five. Penny was three until her birthday in October, 1986, when she turned four. Each daughter was raped by Meder in the home of his wife's parents. The charged incidents of rape by Meder of each daughter occurred within two weeks of Penny's birthday in October, 1986. To keep the girls from revealing the rapes, Meder threatened that he would kill the girls if they told.

■ Such similarities make it likely that Meder committed each act, *Olds*, 831 S.W.2d at 718–19; therefore, joinder of the three offenses of rape in one indictment was proper. In fact, Meder does not argue that joinder of the charges against him was improper. Meder argues only that the trial court abused its discretion in failing to sever the offenses. Meder claims that he was prejudiced by the trial court's failure to sever the charges against him because it would have been impossible for the jury to consider the rape of each child separately. Meder asserts that because the evidence of the rapes of any two of the daughters would not have been admissible in a trial regarding the rape of a

third, the trial court should have severed the counts.

■ Upon finding that the charges against Meder have been properly joined, this court will not reverse the trial court's denial of a motion for severance unless there is both a showing of abuse of discretion and a clear showing of prejudice. *State v. White*, 755 S.W.2d 363, 368 (Mo.App.1988). The trial court, in deciding whether to grant a motion to sever, weighs the benefits of trying the offenses together against the potential prejudice to the defendant. *Id.*

The severance of multiple offenses, jointly charged in an information or indictment, is governed by § 545.885.2, RSMo Cum.Supp. 1992, and Rule 24.07 which provide that the court may grant severance upon a "particularized showing of substantial prejudice." Substantial prejudice is defined as "a bias or discrimination against the defendant or the state which is actually existing or real and not one which is merely imaginary, illusionary or nominal." Section 545.885.2, RSMo Cum.Supp.1992.

■ In assessing whether Meder was actually prejudiced by the trial court's refusal to sever the offenses for trial, the relevant issues are the number of offenses charged, the complexity of the evidence, and whether the trier of fact is able to distinguish the evidence and apply the law intelligently to each offense. *Vinson*, 834 S.W.2d at 827. Meder does not claim that the charges are too numerous or that the evidence is too complex for the jury to distinguish the evidence and intelligently apply the law to each charge. Instead, he contends he was prejudiced because the jury heard evidence of all three rapes.

Meder cites *State v. Davis*, 738 S.W.2d 517 (Mo.App.1987), as authority for his argument. The Southern District of this court in *Davis* reversed the trial court's refusal to sever upon a pronouncement that "unless the evidence showing each of the crimes would have been admissible in the other, then ordinarily the defendant is prejudiced by trying the cases together." *Id.* at 519. Meder argues that if the principle established in *Davis* is applied, the trial court erred in denying his

motion to sever because under *State v. Bernard,* 849 S.W.2d 10 (Mo. banc 1993), evidence of the rape of any two daughters would be inadmissible in a trial for rape of the third daughter.

Common law evidentiary rules, as discussed in *Bernard,* concern the admissibility of evidence of uncharged crimes to establish a defendant's guilt of the crime charged. *Id.* at 13. Joinder concerns the procedural issue of what offenses can be charged in a single information or indictment and tried together. *State v. Simmons,* 815 S.W.2d 426, 428 (Mo. banc 1991). Because the evidentiary rule and the joinder rule involve different issues, the "wholesale importation of [an] evidentiary rule into the law dealing with joinder of offenses [is] inappropriate." *Id.* (quoting *State v. McCrary,* 621 S.W.2d 266, 271 n. 7 (Mo. banc 1981)).

Failing to recognize the difference between the evidentiary rule and the joinder rule, *Davis,* in effect, superimposed the common law evidentiary rules upon the joinder provisions. In doing so, *Davis* relied upon *State v. Wood,* 613 S.W.2d 898 (Mo.App.1981); *State v. Howard,* 601 S.W.2d 308 (Mo.App. 1980); and *State v. Buford,* 582 S.W.2d 298 (Mo.App.1979). Although the court in *Davis* acknowledged it was relying upon cases decided prior to the 1984 amendment of § 545.- 885 and the 1986 amendment of Rule 24.07, it overlooked the 1984 amendment to § 545.140 and the 1986 amendment of Rule 23.05 which first authorized joinder of offenses that "are of the same or similar character." The courts in *Wood, Howard,* and *Buford* ruled that joinder was improper in that there was no evidence of a common scheme or plan as required by the law at that time. *Wood,* 613 S.W.2d at 902; *Howard,* 601 S.W.2d at 310; *Buford,* 582 S.W.2d at 302.

One year after deciding *Davis,* the Southern District in *State v. Johnson,* 753 S.W.2d 576, 586 (Mo.App.1988), upheld the denial of a motion to sever. In doing so, the Southern District rejected defendant's contention that "to avoid emasculation of the rule barring evidence of crimes other than the one for which an accused is on trial, the joinder rule must be construed so that joinder is permitted only where proof or evidence of the commission of one crime is necessary to the proof of the commission of the other." *Id.* at 584. *Johnson* was followed by the Eastern District in *Vinson,* 834 S.W.2d at 827. This court will adopt the rule of *Johnson* and *Vinson,* rather than that of *Davis.*

The circumstances of the three offenses against Meder are sufficiently similar to be joined and there is no particularized showing by Meder of substantial prejudice. Meder was not entitled to severance because the evidence of the rape of any two daughters might not otherwise be admissible at the trial of the rape of the remaining daughter. The trial court's denial of Meder's motion to sever was not an abuse of its discretion. Point I is denied.

Meder argues in Point II that the trial court plainly erred and abused its discretion in admitting evidence of the girls' "sexual acting out" because the probative value of such evidence was clearly outweighed by its prejudicial effect.[3] Meder contends that he was deprived of his constitutional right to a fair trial because this evidence biased the jury against him. Meder argues that no causal link was shown between the girls' "sexual acting out" and the actions of Meder since the girls testified that they had been sexually abused by their uncles.

The trial court has broad discretion in deciding whether to admit or exclude evidence. *State v. Wahby,* 775 S.W.2d 147,

---

**3.** A number of witnesses testified as to the girls' "sexual acting out." Meder's trial counsel repeatedly objected to the questions soliciting such testimony and asked that her objection be continuing. Although the state does not address the preservation of error in its brief, there were questions asked to at least one witness which were not objected to and the possibility that the alleged error was not preserved with regard to other witnesses. Because this court finds that the trial court did not err in admitting evidence of the girls' "sexual acting out" under the standard applicable when objections to the evidence were properly made and the claim of error preserved, it is unnecessary for this court to engage in a lengthy discussion of the evidence and defense counsel's preservation of error, nor discuss plain error review.

153 (Mo. banc 1989). On appeal, the trial court's ruling as to the admission or exclusion of evidence will not be disturbed unless there has been a clear abuse of discretion. *Id.* The trial court has abused its discretion if its ruling is clearly against the logic of the circumstances or unreasonable and arbitrary. *State v. Jack,* 813 S.W.2d 57, 60 (Mo.App. 1991). Even when evidence is relevant, the trial court may still be required to exclude it if the prejudicial effect of the evidence outweighs the considerations which make the evidence useful to prove an issue in the case. *State v. Diercks,* 674 S.W.2d 72, 78–79 (Mo. App.1984).

Meder's argument that the girls were "sexually acting out" as a result of being abused by their uncles, rather than as a consequence of being abused by him, does not require that the evidence be excluded. To be admissible, it is not necessary that the evidence bear on the ultimate issue of whether Meder raped each daughter, but only whether the evidence tends to prove or disprove a fact in issue. *Hatfield v. Cristopher,* 841 S.W.2d 761, 764 (Mo.App.1992). The credibility of the witnesses and the weight to be given the evidence of "sexual acting out" was for the jury, as the trier of fact, to determine. *St. Charles Plastic Drain. Co., Inc. v. Veneers, Inc.,* 494 S.W.2d 696, 698 (Mo.App.1973).

■ The jury was free to believe or disbelieve Meder's claim that the behavior by the girls was the result of abuse by their uncles rather than that of Meder. Meder's sexual contact with the girls, however, was much more extensive and frequent than that of Steve Woods and Mike Woods. Although the abuse by Steve Woods and Mike Woods may have contributed to the girls' behavioral problems, there is evidence in the record from which the jury could have found that the abuse by Meder was the principal cause of the girls' "sexual acting out" behaviors. The trial court did not abuse its discretion in admitting the evidence, because the probative value of the evidence as to the impact of Meder's abuse of the girls outweighs its prejudicial effect. Point II is denied.

■ Meder contends in Point III that the trial court plainly erred in failing to instruct the jury to disregard the prosecutor's allegedly improper closing argument or to declare a mistrial, sua sponte. Meder argues that the prosecutor, during closing argument, misstated the law by incorrectly defining sexual intercourse in front of the jury to mean that mere touching of the vagina with the penis without actual penetration would suffice to convict Meder of rape.

■ Reversible error will not exist unless there is both an abuse of discretion by the trial court and prejudice to the defendant as a result of that abuse. *State v. Mahurin,* 799 S.W.2d 840, 844 (Mo. banc 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 90, 116 L.Ed.2d 62 (1991). To warrant reversal of a conviction for improper closing argument, the defendant must establish that counsel's improper comments had a decisive impact upon the jury's verdict. *State v. Newlon,* 627 S.W.2d 606, 616 (Mo. banc), *cert. denied,* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982).

■ Meder did not object to the prosecutor's argument at trial, so he requests plain error review. Plain error is found only when the court determines that "manifest injustice or a miscarriage of justice has occurred." *State v. McMillin,* 783 S.W.2d 82, 95 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). The plain error rule is to be used sparingly and is not to be used as a vehicle for reviewing every trial error that has not been properly preserved for appeal. *Id.* at 98.

Meder complains of the following statement by the prosecutor during closing argument:

> His contact, him putting his penis down there by her vagina, by these little childrens' vagina, just because he didn't ram it in or whatever, that doesn't mean a rape didn't occur. The rape occurs when he touches their vagina with his penis.

In this claim of error, Meder ignores the argument of the prosecutor proceeding the statement he claims is objectionable. The prosecutor first called the jury's attention to Instruction No. 5 as the definition of sexual intercourse. The prosecutor then said, immediately prior to the challenged statement:

Sometimes we have in our mind, rape, there has to be a full penetration, there has to be intercourse like grown adults have. Well, the law doesn't say that. The law says that sexual intercourse means penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results. However slight.

In response, defense counsel in her closing argument emphasized that rape is penetration and that mere touching is not sufficient.

In his argument, the prosecutor correctly recited the legal definition of "sexual intercourse," which is "any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results." Section 566.010, RSMo Cum.Supp. 1992. The trial court instructed the jury that the law applicable to the case was as stated in the instructions. Instruction No. 5 correctly defined sexual intercourse. The jury instruction was sufficient to clarify any confusion that might have been created by improper prosecutorial comments.

The prosecutor's statement that touching of the vagina by the penis was sufficient to prove rape, taken out of context, was objectionable. Meder has failed to show, however, that such comment in context misled the jury or had a decisive effect upon the jury in their deliberations. Point III is denied.

 In Point IV, Meder argues that the trial court plainly erred in submitting Instruction No. 4, patterned after MAI–CR3d 302.04, because it incorrectly defines reasonable doubt. Meder alleges that the instruction violated his right to due process of law because the instruction, in defining "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt," allowed the jury to find him guilty based on a degree of proof below that required by due process. Counsel did not object to Instruction No. 4 at trial and, thus, the instruction can only be reviewed for plain error.

Meder argues that the Missouri definition of "reasonable doubt" in MAI–CR3d 302.04 is comparable to the definition found unconsti-

tutional in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The argument Meder sets forth as to MAI–CR3d 302.04 has been repeatedly rejected by the Missouri Supreme Court. *See State v. Griffin,* 848 S.W.2d 464, 469 (Mo. banc 1993); *State v. Ervin,* 835 S.W.2d 905, 924 (Mo. banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); *State v. Blankenship,* 830 S.W.2d 1, 13 (Mo. banc 1992); *State v. Twenter,* 818 S.W.2d 628, 634 (Mo. banc 1991). This court is required to follow the last controlling decision of the Missouri Supreme Court. *State v. Weems,* 800 S.W.2d 54, 58 (Mo.App.1990). Point IV is denied.

The judgment is affirmed.

All concur.