GEORGE LEIGHTY, Respondent, v. J. J. MURR and MATTIE MURR, Appellants.

**Springfield Court of Appeals, June 26, 1916.**

1. **EVIDENCE: Original Evidence Destroyed: Secondary, Admissible When.** Though one who has destroyed original evidence without cause cannot introduce secondary evidence (Sec. 7416, R. S. 1909), yet where defendant acquiesced in the destruction of a note by plaintiff, secondary evidence thereof may be introduced by plaintiff.

2. **BILLS AND NOTES: Instrument Destroyed Intentionally: Duress: Suit Maintained, When.** Where the holder of a note destroyed same in response to threats made by the maker, he may maintain suit thereon in the justice court, especially where the maker admitted the execution of the note and the reason for destruction was not a sufficient consideration for the discharge of the note. [Citing Sec. 7416, R. S. 1909.]

Appeal from Texas County Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

ROBERTSON, P. J.—Defendant appeals from a verdict and judgment based on a destroyed negotiable promissory note. The case originated in the court of a justice of the peace.

Section 7416, Revised Statutes 1909, under the heading, "Justices' Courts—Organization and Procedure," is as follows:

"If any suit or set-off be founded upon any lost or destroyed instrument of writing, the party relying upon such lost or destroyed instrument shall be required upon the trial or hearing of the cause to prove such loss or destruction, either by his own oath or by other competent testimony; and if upon such trial or hearing it shall appear that the same was intentionally put away or destroyed, the demand or set-off founded on such instrument shall be rejected."

This section appears in its present form, under the same heading, in Revised Statutes 1835, sec. 8, and so far as we can find it has never been construed or even referred to in any decision of the appellate courts of this State.

The only points involved in this case relate solely to the contested issue as to whether or not plaintiff voluntarily destroyed the note. It is admitted that he destroyed it, but he claims he did so under such threats of criminal prosecution and personal violence on the part of defendant, J. J. Murr, the husband of defendant Mattie Murr, as to constitute duress. We refer to him hereafter as defendant.

Plaintiff testified that he called at the home of the defendants, the husband being absent, and left word with the wife that he desired the balance on the note paid. A few days after this he saw the defendant at church one Saturday night and asked if his wife told him of the word he had left. The defendant replied: "I don't think I owe you anything; you lied me out of $50 on a span of mules. You insulted my wife. I'll smash you. If you say I owe you anything more I'll mash every rib loose from your back bone; I'll kick every rib loose. If you present that note to me I'll kick every rib loose from your backbone." I said 'You owe me that note. I didn't insult your wife at all,' and he said he was going to have me pulled."

Further along plaintiff testified that on the following Monday, at the office of a justice of the peace

in the presence of a number of their neighbors, he made defendant a proposition of arbitration which was refused and defendant stated he would do nothing unless plaintiff burned the note; that defendant's conduct and appearance was such that he had to burn the note. Numerous other witnesses who were then present testified for plaintiff and some of them related occurrences similar to those related by plaintiff as taking place at the church and much more favorable to plaintiff than those to which he testified.

The defendant's wife testified that plaintiff came to their home shortly before the above wrangle; that her husband was not at home and when plaintiff mentioned the note she stated that she thought it had been paid, whereupon plaintiff began abusing her husband, calling him a liar, a thief, a black dog, stating that he was nothing but a low down rascal, wouldn't tell the truth and that she wasn't a bit better.

The defendant testified that plaintiff came up to him at the church and said, "Jim, did your wife tell you what I said down there while you was gone?" This defendant then said to plaintiff that no gentleman would talk to a lady like he talked to his wife, to which plaintiff replied that he knew he did wrong but wanted him to pay the note. Defendant replied that he didn't owe anything on the note and that if he ever talked to his wife again the way he did he would kick every rib loose from his body. "So several pretty rank words passed there at the church house." Defendant's version of what took place at the office of the justice of the peace is in substance that plaintiff asked if he would shake hands with him if plaintiff would destroy the note and if plaintiff would destroy the note if defendant would sign a contract to not prosecute plaintiff, which offers defendant refused, and then defendant continues: "He insisted that I sign up a contract if he would destroy the note, and finally asked if he would destroy the note and shut his mouth if I would and said he didn't want no trouble. I says, 'If you think you have done wrong at my house and are sorry we will quit at that if you want to quit.' " He says

plaintiff then handed the note to one of the bystanders to destroy who handed it back to plaintiff, of whom defendant testified further as follows: "He looked around at me and asked again if I would sign a contract I wouldn't have him prosecuted if he would burn it up, and I said I wouldn't sign nothing. He says, 'Well, I'll hush if you will hush,' and held the note up in his hands and says, 'Here she goes, boys.'" On cross-examination this defendant says that at the church he drew his fist to hit plaintiff. A witness for plaintiff who was present at the office of the justice of the peace testified that defendant told plaintiff that if he ever mentioned the note again he would slap him in the face and that the defendant then made motions as if he was going to strike him; that defendant said he did not deny the note but denied it being just and that he said to plaintiff "You can just burn that note and consider us even and keep your mouth shut or else I'll give you all the trouble I can." Two other witnesses for plaintiff testified that in answer to plaintiff's proposal to arbitrate defendant replied, "No; you got to burn that note or I'll prosecute you." None of these statements were denied by defendant.

The case was submitted to the jury on the theory that the plaintiff must have acted under duress in destroying the note and in behalf of defendants it is contended that the testimony did not tend to prove that fact. As we view the case it is unnecessary to consider the question of legal duress and, therefore, we pass that without undertaking to array the facts with a view of deciding that point.

The destruction of an instrument aimed at in the section of the Statute relied upon by defendants, and which we have quoted above, is not such a destruction as is involved here. The general rule as to destroying instruments is said to be that "A party who will voluntarily, and without cause, deprive himself of original evidence, will not be permitted to use the secondary. The deed being destroyed with mutual consent of parties, and with a view to rescind an unexecuted contract which they learned was illegal, the authorities will

amply sustain under such circumstances the introduction of secondary evidence. [Riggs v. Taylor (Tayloe), 9 Whea. 483.]'' [Skinner v. Henderson, 10 Mo. 205, 206.] In the Riggs case it is said secondary evidence is refused in such cases only when the instrument was destroyed with intent to produce a wrong, an injury to the opposite party, or for fraudulent purposes, or to create an excuse for its non-production. An unpaid note was canceled by the cashier of a bank by mistake and in an action thereon it was held that ''The evidence fully and most satisfactorily accounts for the cancellation of the note, and places beyond the power of the defendants to take advantage of the act of the cashier.'' [Boulware v. The Bank, 12 Mo. 542, 544.] In the case of Schroeder v. Michel, 98 Mo. 43, 49, 11 S. W. 314, secondary evidence of the contents of a letter was held to have been properly admitted where the original was destroyed for fear of its falling into improper hands. In Stephan v. Metzger, 95 Mo. App. 609, 621, 69 S. W. 625, involving the destruction of the original entries of an account upon which the action was based, it is stated that ''The ruling of the learned trial judge amounted to a finding that the conduct of plaintiff in reference to its destruction was characterized by good faith, and justified the admission of secondary evidence of the paper.'' This ruling was approved. Other authorities dealing with this question are 17 Cyc. 525; Conner v. Martin, 92 N. E. (Ind.) 3; Auken v. Hornbeck, 25 Am. Dec. 509, and DiPalma v. Weinman, 121 Pac. 38, 42.

In the case at bar the defendants admitted the execution of the note; there is no contention that it contained any evidence that was essential in the case; according to the testimony of the defendant the note was destroyed in his presence and with his consent. The purposes for which his consent was given were not a sufficient consideration to discharge the debt evidenced by the note, and beyond question plaintiff had no fraudulent motive in destroying the note. It is equally as certain that defendants suffered no harm by reason of the absence of the note at the trial. Even if the conduct of this defendant was not sufficient to constitute

duress, beyond question his conduct led to the destruction of the note by plaintiff and he should not now be heard to say that plaintiff's conduct was "intentional" within the meaning of said law and thereby defeat the collection of a just debt.   Owing to his conduct the plaintiff did not exercise his own will, and whether he acted under legal duress or not the desires of the defendant alone were carried out.   Plaintiff, as a matter of fact, acted for defendant rather than for himself.

## II.

In passing we make some observations concerning said section 7416 which have been suggested as the result of our investigation, although strictly they are not material to our disposition of this case.

Formerly no action at law could be maintained on certain lost instruments.   [Edwards v. Cravens, 1 Mo. 123, 127;   The Warder, Bushnell & Glessner Co. v. Libby, 104 Mo. App. 140, 145, 78 S. W. 338.]   What is now section 1843, Revised Statutes 1909, appears as section 19, page 459 Revised Statutes 1835, under the title "Practice at Law" and then provided that an action at law might be maintained upon any lost instrument.   The only change made since then being such as was necessitated by the change in our procedure. What is now section 1983, Revised Statutes 1909, providing that in any suit or defense founded on a negotiable promissory note which has been lost or destroyed while belonging to the party claiming the amount due thereon parol or other evidence of the contents may be given at the trial and recovery had as though such note had been produced, was first enacted in 1831 (R. S. 1835, p. 464, sec. 26) under "Practice at Law" and has been changed only in respect to the defense that might be founded thereon, it at first providing only for a set-off.   Section 7513, Revised Statutes 1909, providing that the trial practice in suits before justices of the peace shall be the same as in the circuit court, so far as applicable, was enacted in 1879 (R. S. 1879, sec. 2984).   The above comparisons suggest that said sec-

194 M. A.—11

tion 7416 was intended to carry into the practice of the justice of the peace courts the general rule of law applicable to lost instruments, actions on which, in courts of records, were provided for by what are now said sections 1843 and 1983, and that said section 7416 should have no construction that gives it a broader application than is contained within the general rule applicable to suits originating in the circuit court. Section 7456, Revised Statutes 1909, allowing a partial consideration of a bond or a note to be shown and a. recovery to be had accordingly, is first found in Revised Statutes 1835, page 359, section 7, and it was held that such a provision did not extend to actions brought in the circuit court. [Ferguson v. Huston, 6 Mo. 407, 414 and Buford, Adm'r v. Byrd, 8 Mo. 240, 241.] In fact we assume no one will contend that laws enacted to apply to cases originating in a justice of the peace court can be extended to cases originating in the circuit court, and this suggests that by so construing said section 7416 as to keep it in harmony with the general law we thereby have a uniform rule of evidence on this subject for all courts, a thing not absolutely necessary, but desirable, unless some reason exists for an exception.

If the general rule as to secondary evidence of destroyed instruments were applied in this case, as that rule is announced in the authorities we have cited above, it would be as equally clear, as for the reasons we have already given, that the judgment should be affirmed. Believing that the result in this case is proper and that there is no reversible error to be found we affirm the judgment.

*Sturgis, J.,* concurs; *Farrington, J.,* in paragraph I but expresses no opinion as to paragraph II.