STATE of Missouri, Respondent,

v.

Robert M. SNYDER, Appellant.

No. WD 39544.

Missouri Court of Appeals,
Western District.

Feb. 23, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 1988.

Application to Transfer Denied
May 17, 1988.

J.D. Williamson, Jr., John B. Neher, Independence, for appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and MANFORD and NUGENT, JJ.

LOWENSTEIN, Presiding Judge.

Snyder appeals judgments of conviction for forcible rape, armed criminal action, forcible sodomy and kidnapping. The consecutive sentences on the convictions total sixty-five years. The sufficiency of the evidence to support the jury verdicts is not in question, so the facts will be briefly recounted.

The victim, a Ms. Scates, was driving an automobile toward her home in Lexington at about 3:30 in the morning after having been drinking beer. In the community of Buckner she pulled onto the shoulder of Highway 24 and fell asleep in the car. She was awakened sometime later by Snyder, a Buckner policeman, "slapping me on the rear and saying 'get up, get up'". He ordered her into the police car and later took her to his house trailer for coffee. Just after she was allowed to use the bathroom he struck her on the back of her head with what she assumed was the flashlight from the squad car. The blow knocked her to the floor. When she rolled over the defendant had a pistol pointed in her face. On his command she rolled onto her stomach and with her hands behind her back was handcuffed. He took her to the bedroom where after a "pat-down" search, she was sodomized and raped. Afterwards he said he had lost control, took the cuffs off Scates and took her back to her car between 5:30 and 6:00 a.m. where they were seen by a witness. These facts brought out at trial were consistent with prior statements given by both the victim and the defendant. The points on appeal concern introduction in evidence of a police "slapper" and flashlight, the introduction and showing to the jury of a transcript of the defendant Snyder's statement, and failure to define "serious physical injury" in the instructions on the forcible rape and kidnapping counts.

■ Snyder's first point on appeal is that the trial court erred in admitting the police slapper and police flashlight into evidence as state's exhibits. This assertion is based on the supposedly inadequate foundation laid for the items which did not establish their identity or chain of custody, and, in fact, left their involvement in the alleged crime unexplained.

"The admission of demonstrative evidence and whether it was in a properly established chain of custody is primarily within the discretion of the trial judge." *State v. Sherrill*, 657 S.W.2d 731, 736 (Mo. App.1983); *Fravel v. Burlington Northern R.R.*, 671 S.W.2d 339, 342–43 (Mo.App. 1984). Where, as here, the challenge is directed at the foundation necessary for identifying the item of evidence, foundation commonly entails "testimonially tracing the chain of custody of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or has been contaminated or tampered with." *Storm v. Ford Motor Co.*, 526 S.W.2d 875, 878 (Mo.App.1975), quoting McCormick on Evidence, p. 527–28

(2d ed. 1972). Testimony at trial established that the slapper and flashlight were found in a bag in the trunk of the patrol car assigned to Snyder. The bag was inventoried, marked for identification, and placed in the evidence locker. The items making up the contents were not individually marked. A sheriff's deputy testified when shown the slapper and flashlight at trial that they appeared to be the same items that were found in the bag in the car. Snyder objected at trial that the deputy failed to identify the items and that they should have been excluded. The case law is contrary. As noted in *Storm,* "a chain of evidence is sufficiently traced where the circumstances show a 'reasonable assurance that the [object] was the same and in the same condition.' " 526 S.W.2d at 878. *See also State v. Scott,* 699 S.W.2d 760, 764 (Mo.App.1985). Here, the deputy's testimony traced the bag and its contents from the patrol car to the evidence locker. While his testimony at trial was that the items appeared to be the same, "where an unbroken chain of custody is shown, the object will not be excluded merely because ... the identification [was] less than positive." *Storm,* 526 S.W.2d at 879. *See also, State v. Threat,* 530 S.W.2d 41, 42 (Mo.App.1975) (identification of demonstrative evidence not required to be positive, absolute, certain, or wholly unqualified, objections to sufficiency go to weight rather than admissibility).

As to the asserted lack of connection with the crime, the link is provided by the statements of the victim and of Snyder. The victim assumed she had been struck with a flashlight, Snyder's statement indicated he struck the victim with the slapper. Under similar circumstances, a sufficient connection with the accused has been recognized and admission of the items into evidence allowed. *State v. Johnson,* 539 S.W.2d 493, 516 (Mo.App.1976) (bandolier, shells, etc. found within hours of the crime in a room in which appellant was arrested admissible). The *Johnson* court reasoned that even though the weapon or instrument could not be identified as one actually used, its similar form or character or circumstances justifying an inference of its possi-

ble use made it admissible for showing availability to the accused as the means of committing the crime in the manner in which it is shown to have occurred. *Id.* Here, the bag containing the slapper and flashlight were found in patrol car assigned to Snyder within hours after the crime. In the context of the statements given, the possible connection to the alleged crime was clear.

Based on the deputy's testimony concerning the discovery and inventory of the bag, and his identification of the items at trial, the trial judge could have concluded, within his discretion, that the chain of custody was established. Combined with the items potential connection to the crime, Snyder cannot persuasively argue that this evidence was improperly admitted. This point is denied.

■ Snyder's next two points concern his statement. He first states introduction of the transcript of his statement violated the best evidence rule since the tape recording had been destroyed. A captain in Jackson County Sheriff's office conducted and recorded Snyder's confession. The contents were transcribed, Captain Barney reviewed the transcript for accuracy and then, as "standard procedure," the tape was erased. The pertinent provision of the motion for new trial reads:

4. That the Court erred in permitting Captain Barney to read the written statement which he allegedly took from the defendant because said statement would speak for it self [sic] and permitting the witness to read it to the jury emphasised [sic] that particular of evidence over all of the others and caused it to be given undue influence to the prejudice of the defendant.

This point on appeal as to the introduction of the transcript not being allowed as secondary evidence when the law enforcement authorities have destroyed the original tape, was not properly preserved and is reviewed as plain error.

Snyder points the court to *State v. King,* 557 S.W.2d 51, 53 (Mo.App. 1977), which holds the best evidence rule applies to

sound recordings as well as documents and generally requires a taped confession rather than a transcription he admitted. The opinion further states:

> A well-recognized exception to the best evidence rule, however, is that secondary evidence may be admitted in lieu of the original if the original is unavailable provided that the original has not been destroyed, lost or become unavailable through the fault of the proponent and the secondary evidence does not appear to be untrustworthy. *United States v. Knohl,* 379 F.2d 427, 441 (2d Cir.1967) 4 Wigmore, Evidence, § 1192, p. 436. Therefore, in allowing secondary evidence to be admitted the proponent must prove three things (1) the original is unavailable; (2) for some reason which is not the proponent's fault, and (3) the secondary evidence is trustworthy.

*Id.* at 53–54. Snyder alleges the destruction of the tape by the proponent, the state, violates the second criterion of *King* which is designed:

> to prevent the proponent from taking deliberate affirmative action to destroy the best evidence for the purpose of preventing its production in court.

The state counters this question by reliance on *State v. Powell,* 648 S.W.2d 573, 575 (Mo.App.1983), which states the best evidence rule does not preclude secondary evidence, "it merely embodies the law's preference for the best available evidence ... [T]he trial court has wide discretion in the determining the admissibility of secondary evidence."

There was no evidence here of the state destroying the tape with intent to prevent its contents introduction in court, *King, supra,* or to produce a wrong, an injury to the other side, or for any fraudulent purpose. *Leighty v. Murr,* 194 Mo.App. 156, 186 S.W. 734, 735–36 (1916). The person who took the statement testified the transcript did not differ from the tape. *State v. O'Dell,* 649 S.W.2d 504, 507 (Mo.App. 1983). Further, the victim-witness testified as to the same events as in the transcript of the statement. *State v. Little,* 674 S.W. 2d 541, 543 (Mo. banc 1984). *Little* went on to say no rule automatically provides exclusion when the tape is erased, without showing of ulterior motive, and where a witness and the person who took the statement are in court, the facts of the interview may be established, with the matter of destruction going to weight not admissibility. *Id.*

■ Snyder next complains of the jury being allowed to view a blown up copy of his transcribed confession. He contends this demonstrative evidence was inflammatory and unnecessarily prejudiced him. Captain Barney who took the statement was allowed to point and refer to the statement during his time on the stand. Suffice it to say the trial court was in a better position for balancing the probative value and the prejudicial effect of this exhibit. *State v. Holmes,* 609 S.W.2d 132, 135 (Mo. banc 1980). The exhibit here accurately portrayed the events shown and should not be rejected because it also tended to be inflammatory. *Id.* at 136. The point is denied.

Snyder's final point on appeal alleges that the trial court erred in submitting instructions 5 and 11 to the jury without defining the term "serious physical injury," rendering the instructions legally defective and insufficient. In spite of the fact that Snyder has failed to set out the instruction in full in the argument portion of his brief, as required by Rule 30.06(e), the court will review this point.

Snyder relies on two cases in arguing that the term "serious physical injury" should have been defined in the jury instructions. *State v. Rodgers,* 641 S.W.2d 83, 84 (Mo. banc 1982), and *State v. Ogle,* 627 S.W.2d 73, 74 (Mo.App.1981), held that the failure to define "serious bodily injury" and "serious physical injury," respectively, was error, the prejudicial effect of which had to be determined by the court. Both cases, however, were interpreting the provisions of instructions from the MAI–CR2d series, which expressly required the definition of those terms.

At issue here are the pattern instructions from the MAI–CR3d series. The Notes on Use for neither MAI–CR3d 320.02.1B (forc-

ible rape) nor MAI–CR3d 319.24 (kidnapping) require a definition for "serious physical injury." The Notes on Use for 319.24 allow for a definitional instruction of "physical injury" on the court's own motion or upon written request by the state or defendant, but the record does not reveal that such a request was made.

 If an applicable criminal instruction is provided by MAI–CR, it is mandatory that the court give the instruction as written. *State v. Outley,* 693 S.W.2d 184, 188 (Mo.App.1985); *State v. Moore,* 615 S.W.2d 108, 109 (Mo.App.1981). When the proper instruction is given, a court on appeal is powerless to declare it erroneous. *State v. Frank,* 639 S.W.2d 209, 211 (Mo. App.1982). More specifically, the court has "no authority to declare erroneous those instructions and their accompanying Notes on Use which have been adopted for standard use by the Supreme Court." *Outley,* 693 S.W.2d at 188; *State v. Dixon,* 655 S.W.2d 547, 560 (Mo.App.1983). Here, there is no allegation that the instructions given were not those applicable. The Notes on Use do not require definition of the terms as Snyder urges should have been done. This court declines to find error under circumstances when the trial court acted in compliance with MAI–CR.

Adding weight to this conclusion is the line of cases exemplified by *State v. Chaney,* 663 S.W.2d 279, 283–84 (Mo.App.1983), and *State v. Blockton,* 703 S.W.2d 500, 504 (Mo.App.1985), which examined for plain error the failure to included the "serious physical injury" definition when it was required under the applicable MAI–CR. Reasoning that the accuseds' use of weapons in compelling their victims rendered additional clarification of the potential for serious physical injury unnecessary, these courts did not find plain error. *See also, State v. Pippenger,* 708 S.W.2d 256, 269–70 (Mo. App.1986) (jury could find victim feared for her life because of means used by accused); *State v. Allbritton,* 660 S.W.2d 322, 327–28 (Mo.App.1983) (jury not misled and surely know what serious physical injury is when knife is placed to throat); *State v. Van Doren,* 657 S.W.2d 708, 714 (Mo.App.1983)

(jury not misled and obviously knife at throat indicates risk). This logic certainly extends to the present facts where the victim faced Snyder holding a pistol six inches from her head. Snyder's final point is denied.

The judgment is affirmed.