STATE of Missouri, Respondent,

v.

Edward MOORE, Appellant.

No. 64688.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 28, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 4, 1994.

Application to Transfer Denied
Sept. 20, 1994.

Edward Moore, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Presiding Judge.

Appellant, Edward Moore, appeals his jury conviction for assault in the first degree, § 565.050 R.S.Mo.1986 (all further statutory references shall be to R.S.Mo.1986 unless otherwise noted) for which he was sentenced as a Class X offender, § 558.019, to thirty years in the Missouri Department of Corrections.

On appeal, appellant, acting *pro se*, contends the trial court erred in: (1) denying his motion for judgment of acquittal; (2) refusing his proposed jury instruction on second degree assault; (3) denying a hearing on his motion to dismiss pursuant to the interstate agreement on detainers and on his motion to dismiss for denial of a speedy trial; (4) coercing him into waiving his right to a speedy trial; (5) denying his motion to dismiss pursuant to the interstate agreement on detainers; (6) denying his motion to dismiss for denial of a speedy trial; (7) denying his motion for continuance; (8) denying his motion to dismiss the information for failure to provide fair notice of the charges; (9) denying his motion to dismiss the information on the basis that § 565.050 violates due process; (10) overruling his objection to the verdict directing instruction; (11) denying a hearing on his motion to suppress marital communications; (12) overruling his objection to the disclosure of privileged marital communications; (13) sustaining the state's objections to various questions during cross-examination of a state's witness; (14) accepting his waiver of his right to counsel; (15) denying his request for substitution of appointed counsel; (16) denying his right to self-representation; (17) admitting into evidence a receipt for a motel room; (18) denying his request for out-of-state witnesses; and (19) overruling his objection to MAI–CR3d 302.04, defining reasonable doubt. We affirm.

Viewed in a light most favorable to the verdicts, the evidence establishes that on November 29, 1989, appellant and Sherry

Frank, having driven from Texas, checked into a motel in St. Louis County. At some point in the late evening or early morning hours, Frank went by herself to the vending machine area to get some sodas. In the vending machine area was the victim, whom Frank described as having a messy appearance, talking on the telephone. As Frank was leaving the vending area, the victim hung up the phone and asked Frank if she "wanted to get laid." Frank did not respond, but went back up to her room and told appellant what happened. Appellant requested Frank to get some ice, but she refused stating she was scared to go back to get ice. Appellant went and got some ice, brought it back to the room, and left for approximately four or five minutes. When appellant returned again he had splotches of blood on his jeans from the middle of the thigh down, and also on his shoes, and he looked angry. Appellant grabbed Frank by the arm and took her to the lobby. Appellant shoved her into the door and said, "This is what I done for you. I broke his neck. He's dead." Frank observed the victim lying on the floor with a puddle of blood around his head. The two then went back to their room and appellant told Frank that if she said anything he would do the same thing to her or "tag her toe." Appellant then took off his jeans and put them in the shower, and asked Frank to clean his shoes. She intentionally left some blood on his shoes, and left the bloody washrag that she had used under the sink. At some point, they heard sirens outside and went to a nearby restaurant. They left the restaurant without finishing eating when two police officers entered, and they went back to the motel. When they got back, appellant left for several hours. The next morning, appellant went to the lobby to register for another night, and was questioned by the St. Louis County police if he recalled seeing a man in the lobby the night before. Appellant told the police that he had come to the vending area twice the night before and saw a man seated in the corner dressed in old clothes. The police officer inspected appellant's shoes and pants and found no evidence of blood. The victim was taken to a nearby hospital, and diagnosed with abrasions and contusions on his head and face, and a laceration of his lip. His external injuries included extracranial soft tissue swelling indicating massive impact to the head, consistent with having been struck with a fist, foot or some type of a blunt object. The victim also suffered underlying injury to the brain causing him to remain in a very unresponsive state, with very slim hope for any change. He had a tracheotomy to assist him in breathing, and a feeding gastrectomy was inserted in his stomach to maintain his nutritional status. In addition, he has repeated problems with episodes of pneumonia in his lungs and kidney infections. During the fifteen months he spent in the hospital, the victim was not able to speak, and responded only to very painful stimuli.

Frank, after returning to Texas, maintained her silence about the incident in fear of appellant's threats. Eventually, several months later, Frank's father told her that he dreamed she was standing in a room or lobby over a dead body. At that point, she told her parents about what happened, and eventually spoke to an FBI agent and police officers from St. Louis County, and gave statements regarding the assault. Thereafter, appellant was charged with first degree assault, and after a jury trial, was convicted.

■ In his first point, appellant contends the trial court erred in denying his motion for judgment of acquittal and thereby denied appellant due process of law in that the evidence is insufficient to conclude beyond a reasonable doubt that Frank's testimony refers to the victim and, further, contains destructive contradictions which rob her testimony of probative value.

On review we accept as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregard all contrary evidence and inferences. *State v. Grim*, 854 S.W.2d 403, 405[1] (Mo. banc 1993). In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.* The testimony of a single witness is sufficient to support a conviction even though testimony of that witness might be

inconsistent, as any inconsistencies are for the jury to resolve. *State v. Rodney,* 760 S.W.2d 500, 503[3, 4] (Mo.App.1988). Similarly, contradictions in a witness' testimony do not prevent it from constituting substantial evidence. *Id.*

Here, the evidence established that appellant took Frank to the vending machine area of the motel, and showed her the man he had assaulted. Frank testified this was the same man who had made the earlier remark to her. She testified as to the position of his body on the floor, and that there was blood around his head. When the victim was later found by the police and paramedics, he was on the floor in the vending machine area with a large amount of blood under his head. Thus, the evidence is sufficient for the jury to infer that the man Frank saw and who appellant stated he had assaulted, was the victim.

Appellant argues, however, that Frank's testimony contains destructive contradictions which rob her testimony of probative value. Appellant argues that the time of day when Frank saw a man lying on the floor of the vending area of the motel is dispositive of the question whether this man was the victim, and that whether it was night or day when she saw a man lying on the floor of the vending area of the motel is a vital question in the case. He points to Frank's testimony where she states that she remembered it being light and she remembered it being dark when the incident occurred. She testified that it was dark later on when she heard sirens, and she also testified that she did not remember what time the incident occurred. The credibility and weight given trial testimony is determined by the trier of fact. *State v. Ash,* 840 S.W.2d 304, 305 (Mo.App. 1992). We do not find the inconsistencies in Frank's trial statements regarding material matters to be so inconsistent with each other that her testimony loses its probative value. Point denied.

■ Appellant's second point is that the trial court erred in denying his requested instruction on second degree assault by recklessly causing serious physical injury because the trial court was required to give the instruction in that there is an evidentiary basis for acquitting him of first degree assault. He argues that the testimony of Dr. Lawrence Billy, that the victim's only external injuries were an abrasion on the cheek and forehead, a black eye and a very small laceration of the lip, supports only one inference, i.e., appellant endeavored to give the victim a black eye and a fat lip. He argues also that the victim's only serious injury, closed head trauma, was an internal injury about which appellant could not have known and which is therefore in no way indicative of appellant's intent.

■ Trial courts are not obligated to instruct on a lesser included offense unless there is a basis for a verdict acquitting the defendant of the greater offense and convicting him of the included offense. *State v. Mease,* 842 S.W.2d 98, 110–11[27] (Mo. banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993). There must be some affirmative evidence of a lack of an essential element of the higher offense which would not only authorize acquittal of the higher, but sustain conviction of the lesser. *State v. Logan,* 809 S.W.2d 135, 137[2] (Mo. App.1991).

A person commits the crime of assault in the first degree if he "attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." Section 565.050.1. A person commits the crime of second degree assault if he "recklessly causes serious physical injury to another person." Section 565.060.1(3).

Here, the evidence shows that in addition to the injuries which appellant notes on appeal, the evidence shows the victim also had a great deal of extracranial soft tissue swelling primarily over the top of the head in the scalp area on the right side. The victim's injuries were consistent with his having been "impacted multiple times about the top of the head and the right side of the face. It should be consistent with having been struck with something like a fist, a foot, some type of blunt object." This evidence, along with the blood on appellant's pants and shoes, and the pattern of blood splatters on the wall in the vending machine area of the motel, is sufficient for the jury to find that appellant

attempted to kill or knowingly caused or attempted to cause serious physical injury to the victim by repeatedly kicking him in the head while he was bleeding on the floor. The natural consequences of such action is to cause serious physical injury to the person being kicked. Further supporting this inference is the fact that afterwards, appellant took Frank to show her his accomplishment and stated, "This is what I done for you. I broke his neck. He's dead." Appellant's defense, although he did not testify, consisted of the implications that Frank was lying about his involvement, and that the evidence did not establish that the person which he was accused of assaulting was the person found lying in the vending machine area of the motel. There was no affirmative evidence to acquit appellant of first degree assault and convict him of second degree assault. Point denied.

In his third and fifth points, appellant claims the trial court erred in denying a hearing on his motion to dismiss pursuant to the interstate agreement on detainers and his motion to dismiss for denial of a speedy trial, thereby denying him a full and fair hearing contrary to Rule 24.04(b)4, and preventing meaningful appellate review contrary to due process, and in denying his motion to dismiss pursuant to the interstate agreement on detainers.

At the July 3, 1991 hearing, the following transpired:

THE COURT: ... Let me go ahead and just go through this and address myself to each of the motions that have been filed with the exception of the three motions that have been filed by your counsel today.

Your first motion is your supplemental motion to dismiss based on the violation of the Interstate Agreement on Detainers. That motion is going to be denied.

[APPELLANT]: Your Honor, in that regard I would like a transcript of the hearing of the May 20th hearing where the waiver—I would like those notes transcribed so I can go to the Court of Appeals.

THE COURT: If you want that transcript, you can go ahead and make arrangements to obtain it through your counsel. There are provisions for your counsel to obtain transcripts.

From the preceding excerpt, we find that appellant did have a hearing on his motion to dismiss pursuant to the interstate agreement on detainers, and that his motion was denied. Appellant did not request an opportunity to orally argue his motion, but sought only a transcript of a previous hearing so that he could "go to the Court of Appeals." Appellant's third point is denied.

Appellant's fifth point asserts error in the denial of his motion to dismiss pursuant to the interstate agreement on detainers. Section 217.490.

The record reflects that appellant's written notice was filed with the trial court on December 3, 1990. Appellant was arraigned on April 16, 1991, an appearance was entered by an assistant public defender, and the cause was set for trial on May 20, 1991. On May 20, 1991, appellant appeared with counsel and the state announced it was ready for trial. Appellant, however, moved for a continuance to allow his attorney more time to prepare for trial. He stated at the hearing on his motion that his attorney was not prepared for trial, that he was facing a choice between a speedy trial and effective assistance of counsel, and that he elected to agree to "a reasonable and necessary continuance as per the Interstate Agreement on Detainers." Appellant stated his concern about delay was that the state would "gain an advantage waiting for the victim to die." Appellant stated that he did not agree "to an indefinite continuance so the victim dies and the crime is raised to something more severe than it is already." As of May 20, 1991, appellant's counsel had approximately 34 days to prepare for trial. Appellant waived his right to a speedy trial, and the trial court then set the case for trial on July 15, 1991.

■ It is generally held that delay of a prisoner's trial resulting from his affirmative action or agreement is not to be included in the period of limitation. *State v. Smith*, 686 S.W.2d 543, 547[8] (Mo.App.1985). Where a defendant asks for additional time to prepare, requests or consents to a continuance, or when a delay is necessitated because of

motions filed by the defendant, the period of limitation has been tolled. *Id.,* at 547–48[8].

Here, after the trial date of July 15, 1991 was set, appellant became dissatisfied with his counsel and moved to proceed *pro se,* and the trial court granted his motion. He was then granted a continuance from July 15, 1991, to August 12, 1991. Another continuance, by consent, was granted until September 3, 1991. On September 3, 1991, appellant moved for a change of judge, which was granted, and also for a continuance, which was denied.

Thus, it appears from the record that the delays in bringing the case to trial were attributable to appellant, and that the trial court did not err in denying his motion to dismiss pursuant to the Interstate Agreement On Detainers.

■ In his fourth and sixth points, appellant claims the trial court erred in coercing him into waiving his Sixth Amendment right to a speedy trial, and in denying his motion to dismiss for denial of a speedy trial.

Appellant had a hearing on his motion where it was established that appellant received a continuance on May 20, 1991, to July 15, 1991. The record also establishes, as previously noted, that appellant requested and received continuances to August 12, 1991, and then to September 3, 1991, when another motion for continuance was denied. The record reflects that the state announced it was ready for trial at the arraignment and at every subsequent trial date.

The trial court did not coerce appellant into waiving his right to a speedy trial. The trial court merely stated that either appellant waived his right to a speedy trial or the case would go to trial the week of May 20, 1991. Appellant, of the opinion that his counsel was not prepared, waived his right to a speedy trial in order to secure a continuance. Thus, his fourth and sixth points must fail.

■ In his seventh point, appellant contends the trial court erred in denying his motion for continuance on September 3, 1991, the day of trial, because he was forced to go to trial without adequate discovery and time to prepare which caused him to commit a decisive strategical error and rendered him ineffective generally, thereby denying him due process.

■ The grant or denial of a motion for a continuance rests within the sound discretion of the trial court which will not be disturbed absent a strong showing of abuse, and the party requesting the continuance bears the burden of demonstrating prejudice resulting from the denial of such. *State v. Sweet,* 796 S.W.2d 607, 613[7] (Mo. banc 1990), *cert. denied,* 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 270 (1991). Inadequate preparation is not grounds for granting a continuance where one has had ample opportunity to prepare. *State v. Schaal,* 806 S.W.2d 659, 666[13] (Mo. banc 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 976, 117 L.Ed.2d 140 (1992).

The record indicates that on May 20, 1991, appellant appeared with counsel, and the state announced it was ready for trial. On the same day, however, appellant moved for a continuance to allow his attorney more time to prepare for trial and waived his right to a speedy trial, and the trial court then set the case for trial on July 15, 1991. Appellant was granted a continuance from July 15, 1991, to August 12, 1991. Another continuance, by consent, was granted until September 3, 1991. At the June 3, 1991 hearing concerning appellant's motion to proceed *pro se,* the trial court found that based on appellant's responses to the court's questions, appellant had voluntarily and knowingly waived his right to counsel, and ordered that the office of public defender make available to appellant resources to permit him to conduct trial preparation. At the June 7, 1991 hearing, the trial court, after questioning appellant, found that his June 3, 1991 decision to waive counsel was not free and voluntary, and ordered that the public defender's office represent him. At the July 3, 1991 hearing, the trial court refused to reconsider appellant's motion to appear *pro se* as appellant had requested. On August 26, 1991, the cause was set for trial on September 3, 1991. At the August 28, 1991 hearing, the trial court granted appellant's motion for waiver of counsel, and permitted him to proceed *pro se.* On September 3, 1991, appellant filed

another motion for continuance, which the trial court denied on the same day.

Appellant had over three months to prepare for trial. Further, appellant does not explain how he was prejudiced by the denial of his September 3, 1991 motion for continuance. Additionally, we note that the trial court previously granted two continuances. Point denied.

■ In his eighth point, appellant contends that the trial court erred in denying his motion to dismiss the information in that the information is duplicitous inasmuch as it charges both first degree assault and attempted assault and therefore, the information fails to provide fair notice of the "charge(s)" and appellant was thereby denied due process of law. Appellant argues that attempting to kill or cause serious physical injury are distinct offenses which cannot be joined in a single count.

An information is sufficient when it contains all the essential elements of the particular offense and clearly apprises the defendant of the facts constituting the offense. *State v. Heslop*, 842 S.W.2d 72, 76[8] (Mo. banc 1992), *cert. denied*, — U.S. —, 113 S.Ct. 2369, 124 L.Ed.2d 275 (1993). Section 565.050 R.S.Mo.1986 states that "[a] person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person."

The information for first degree assault states as follows:

The Prosecuting Attorney of the County of St. Louis, State of Missouri, charges:

COUNT 01: ASSAULT IN THE FIRST DEGREE—CLASS A FELONY

That [appellant], in violation of Section 565.050, RSMo, committed a class A felony of assault in the first degree, punishable upon conviction under Section 558.011.1(1), RSMo, in that on or about Thursday, November 30, 1989 at approximately 12:30 a.m., at 1405 Dunn Road, in the County of St. Louis, State of Missouri, [appellant] attempted to kill or knowingly cause serious physical injury to [victim] by striking [victim] in the head, and in the course

thereof inflicted serious physical injury to [victim].

MACH–CR 19.02 [1987 Revision] states in pertinent part:

## ASSAULT IN THE FIRST DEGREE

The ... (Prosecuting Attorney) of the ... (County) of _____, State of Missouri, charge(s) that the defendant in violation of Section 565.050, RSMo, committed the class ... (A) felony of assault in the first degree, punishable upon conviction under *[Insert Section 558.011.1(1), if charged as a class A felony; ...]*, RSMo, in that ... (on or about) [date], in the ... (County) of _____, State of Missouri, the defendant *[Insert one of the following. Omit brackets and number.]*

[*1*] knowingly caused serious physical injury to *[name of victim]* by *[insert means by which injury was caused, such as shooting, stabbing, etc.](.)*

■ attempted to kill or cause serious physical injury to *[name of victim]* by *[insert means by which attempt was made such as shooting, stabbing, etc.]* (, and in the course thereof inflicted serious physical injury in *[name of victim]* ).

### Notes on Use (1987 Revision)

\* \* \* \* \* \*

5. **Two Counts:** If an offense is to be charged as assault in the first degree as a class A felony by the use of both options, the allegations of option [*1*] must be used in one count and the allegations of option [*2*] must be used in a separate count.

Further, prior to submission, the state must elect which of the two counts will be submitted to the jury. See Notes on Use to MAI–CR 3d 319.02 and MAI–CR 3d 319.06.

Although the state did not set out "attempted to kill or cause serious physical injury to" and "knowingly caused serious physical injury" in separate counts as suggested by MACH–CR 19.02 Note 5 on Use, we find that the information contained all the essential elements of the particular offense and clearly apprised the defendant of the facts constituting the offense. See *State v. Hes-*

*lop, supra.* Additionally, appellant has not shown he was prejudiced by the wording of the information. Point denied.

■ In his ninth point, appellant asserts that the trial court erred in denying appellant's motion to dismiss the information, in that Section 565.050 fails to establish minimal guidelines to govern law enforcement, and therefore, section 565.050 violates the due process clause.

■ We must first consider whether this court has jurisdiction to decide a constitutional challenge. *State v. Prowell,* 834 S.W.2d 852, 854[1] (Mo.App.1992). If a case involves the constitutional validity of a state statute, the court of appeals does not have jurisdiction of the appeal. *Id.;* Mo. Const. art. V, § 3. The mere assertion of a constitutional issue, however, does not deprive the court of appeals of jurisdiction unless the constitutional issue is real and substantial, and not merely colorable. *Prowell* at *id.* Because we find appellant's constitutional claim merely colorable and not substantial, we have jurisdiction. *See id.*

Appellant argues that under the attempt theory of first degree assault, the jury is not instructed to consider whether the defendant acted purposefully, knowingly, or recklessly. Appellant asserts that in fact, all the jury must find is that the defendant caused serious physical injury inasmuch as proof that the defendant caused physical injury goes well beyond a mere attempt to cause serious physical injury. Appellant contends that hence, the jury could find that the defendant recklessly caused serious physical injury and nonetheless convict the defendant of the attempt theory of first degree assault.

Vagueness as a due process violation takes two forms. *State v. Young,* 695 S.W.2d 882, 884[5] (Mo. banc 1985). One is the lack of notice given a potential offender because the statute is so unclear that persons of common intelligence must necessarily guess at its meaning. *Id.* The second is that the vagueness doctrine assures that guidance, through explicit standards, will be afforded to those who must apply the statute, avoiding possible arbitrary and discriminatory application. *Id.*

Section 565.050.1 states that "[a] person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." Section 564.011.1 states in pertinent part that "[a] person is guilty of attempt to commit the offense when, with the purpose of committing an offense, he does any act which is a substantial step towards the commission of the offense." Section 562.016.2 states that "[a] person **'acts purposely'**, or with purpose, with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result." From these statutes, we find that the offense of assault is sufficiently defined so that a person of common intelligence would not have to guess at its meaning and that it has explicit standards to prevent its arbitrary and discriminatory application. Point denied.

■ In his tenth point, appellant claims the trial court erred in overruling his objection to instruction number 6, the verdict directing instruction, in that the instruction fails to define the word "attempt" and fails to require the jury to find appellant acted with the required culpable mental state, thereby authorizing the jury to convict appellant of first degree assault without finding proof beyond reasonable doubt of each element of the defense of first degree assault, and there is a reasonable likelihood that the jury read the instruction as authorizing a conviction for first degree assault wholly on a finding the appellant caused serious physical injury to the victim, and therefore, appellant was denied due process of law.

Instruction number 6 states:

## INSTRUCTION NO. 6

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about November 30, 1989, in the County of St. Louis, State of Missouri, the defendant attempted to kill or cause serious physical injury to [victim] by striking him, and

Second, that defendant in the course of such conduct caused serious physical inju-

ry to [victim], then you will find the defendant guilty of assault in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

If you do find the defendant guilty of assault in the first degree, you will return a verdict finding him guilty of assault in the first degree.

 If an applicable criminal instruction is provided by MAI–CR, it is mandatory that the court give the instruction as written. *State v. Snyder,* 748 S.W.2d 781, 785[4] (Mo. App.1988). Words are not to be defined in an instruction unless specifically authorized by MAI–CR3d. *State v. Wade,* 815 S.W.2d 489, 491[4] (Mo.App.1991). No definition is required of words of common usage. *Id.* at [5].

Appellant concedes in his brief that instruction number 6 follows MAI–CR3d 319.06 and that the court was required to give this instruction. "Attempt" is not defined by MAI–CR3d 319.06, and we find that no definition is required because it is a word of common usage. Point denied.

In his eleventh point, appellant contends the trial court erred in denying a hearing on his motion to suppress marital communications and his motion in limine and deciding those motions based on *ex parte* communication with the prosecutor, thereby denying appellant due process of law. The record is clear, however, that on July 3, 1991, with appellant present, the trial court discussed appellant's motion to suppress marital communications and his motion in limine regarding marital communications. The trial court deferred ruling on these motions until trial. At a pre-trial hearing on the same day the trial was held, with appellant and the prosecutor present, the trial court denied his motions. Point denied.

 In his twelfth point, appellant claims the trial court erred in overruling his objection to the disclosure of privileged marital communications during Frank's testimony. He argues that the communications were privileged from disclosure by § 546.260.1 because the record establishes a valid common law marriage under Texas law between appellant and Frank. The law to which appellant refers is § 1.91 of the Texas Family Code which provides that the marriage of a man and woman may be proved by establishing that they agreed to be married, and after the agreement they lived together in Texas as husband and wife and there represented to others that they were married. *Whitley v. Whitley,* 778 S.W.2d 233, 238[9] (Mo.App. 1989); *Estate of Claveria v. Claveria,* 615 S.W.2d 164, 166[37] (Tex.1981).

Section 546.260.1 prohibits a husband or wife from disclosing "confidential communications had or made between them in the relation of such husband and wife." Appellant argues that the evidence establishes the three elements of common law marriage and that without Frank's testimony as to incriminating statements attributed to appellant, the state did not make a submissible case.

The record shows that appellant and Frank did co-habit. The record also shows that appellant held Frank out as his wife regarding a lease on an apartment. Frank testified that in prior lawsuits in Texas she testified her name was Sherry Moore, and that she signed some pleadings and letters as Sherry Moore in regards to a lease on an apartment, which could support an inference of holding themselves out as husband and wife. There is, however, no direct evidence of an agreement between appellant and Frank to marry. Appellant argues that the agreement to be married need not be an express agreement, but may be implied or inferred from the evidence which establishes the other two elements.

Assuming, without deciding, that appellant's argument is correct, the record does not contain evidence from which such an inference can be drawn. Frank testified that she represented her name was Sherry Moore because that's what appellant told her to do. She also stated that she never believed she

was appellant's wife. As such, the record supports a conclusion that there was no agreement between Frank and appellant to marry, and the trial court therefore did not err in overruling appellant's objection to Frank's testimony based on disclosure of marital communications. Point denied.

■ In his thirteenth point, appellant asserts the trial court erred in "thwarting" appellant's cross-examination of Frank, the state's key witness, by sustaining eight objections by the state, each of which he sets out in separate subpoints lettered (A) to (H), which denied appellant "confrontation of Frank" in violation of the Sixth and Fourteenth Amendments.

Appellant did not preserve his claims presented in subpoints (B), (D), (E), and (F) because he did not raise them in his motion for new trial, thus, we will not review these subpoints. See *State v. Williams*, 812 S.W.2d 518, 519[1] (Mo.App.1991).

In subpoint (A), appellant asserts that the trial court erred in sustaining the state's objection and refusing to admit into evidence exhibit A, which appellant maintains is a transcript of Frank's testimony given in Texas lawsuit, in that exhibit A was sufficiently authenticated as a prior inconsistent statement by Frank which contradicted Frank's testimony on direct examination that her name is Sherry L. Frank and her description of her relationship with appellant.

A trial court has broad discretion in determining the admissibility of evidence, and its determination will not be disturbed on appeal absent a clear abuse of discretion. *State v. Wahby*, 775 S.W.2d 147, 153 (Mo.App.1989).

The record on appeal contains a document which appears to be a transcript of Sherry Frank's testimony given in a case before a trial court in Texas. The transcript is not identified as Exhibit A. We note that at trial, the court reporter marked a transcript as Exhibit A for identification. The transcript has a signed reporter's certificate but no seal certifying its authenticity. The record indicates that at trial, the state objected to the admission of Exhibit A because it was not properly certified with a seal, and the

trial court sustained the objection and refused to admit Exhibit A.

Assuming, without deciding, that the transcript included in the record on appeal is Exhibit A, the trial court properly sustained the state's objection and refused to receive Exhibit A because it was not properly certified. See § 490.130 R.S.Mo.1986. Point denied.

In subpoint (C), appellant asserts that the trial court erred in sustaining the state's objection to and refusing to admit into evidence exhibit B, which appellant asserts is a bank statement, in that exhibit B impeached and contradicted Frank's testimony on direct examination by the state as to her relationship with appellant and her denial of ownership of an air conditioning company, which was the factual basis for her motive for testifying against appellant and the source of her "ill will" toward appellant.

Exhibit B is not part of the record on appeal. Where a document is not part of the record on appeal, we will not include the document in our review. *Baugh v. State*, 870 S.W.2d 485, 490[2] (Mo.App.1994). Thus we will not include Exhibit B in our review.

■ In subpoint (G), appellant asserts that the trial court erred in sustaining the state's objection to appellant's inquiries to Frank as to whether appellant told Frank he was questioned by the police and that the police checked appellant's shoes for blood in that appellant's statements to Frank were not offered for the truth therein but to explain Frank's reason for accusing appellant of this offense and alleging appellant had blood on his shoes. Appellant asserts this line of questioning would have shown that Frank's statement that appellant had blood on his shoes when questioned by the police was inconsistent with the testimony of Detective Zinselmeier, who testified that he did not see any blood on appellant's shoes after the offense.

During cross-examination of Frank by appellant at trial, the following transpired:

[APPELLANT]: .... And did [appellant] tell you that they were looking for bloody shoes?

[PROSECUTOR]: Judge, I object, hearsay.

THE COURT: Sustained.

[APPELLANT]: Okay. But the [appellant] did tell you about being questioned?

[PROSECUTOR]: Judge, once again, this is all hearsay. I will object for that reason.

[THE COURT]: Sustained.

[APPELLANT]: For the record I would like to state the reason this is being offered is not for the truth of the matter, but it's being offered to explain the witness's testimony. It's not offered as for the truth of the matter when the [appellant] was questioned or anything else. It's merely offered to explain this witness's testimony.

[PROSECUTOR]: Judge, I think it's quite clearly offered for the truth of the matter.

\* \* \* \* \* \*

THE COURT: Now, you tell me again the question you want her to answer.

[APPELLANT]: I'm asking her did the [appellant] tell her about being questioned by the police. You know, they were checking out his shoes and all this and I'm merely asking that question, not for the truth of the matter, Your Honor, but so that the jury is not left with the impression that her knowledge comes from any sort of firsthand experience, that there is another source of knowledge in the case.

In other words it's being offered to explain her testimony as to any false impression that might be left by her testimony regarding this case, you know, as to details of it as to where they come from or where they could have come from. It is not necessarily so that the only place it could have come from is firsthand experience.

[PROSECUTOR]: Well, Judge, that quite necessarily means that if it's being offered for the truth of the matter asserted.

[APPELLANT]: No, not—

[PROSECUTOR]: That in fact that those statements were true.

[APPELLANT]: No, not that those statements were true, but that [appellant] made them.

[PROSECUTOR]: Well, either way I don't think you can get around it.

THE COURT: Well, I'm going to sustain the objection. There may be other grounds to which—other grounds on which it's objectionable, but I'll sustain the objection.

The record indicates appellant was attempting to offer his out-of-court statements' for their truth as to whether his shoes were bloody, and thus, the trial court did not err in sustaining the state's objection. See *State v. Dunn*, 817 S.W.2d 241, 243 (Mo.App.1991).

■ In subpoint (H), appellant claims the trial court erred in sustaining the state's objection to the question, "Let me ask you what you hope to accomplish by testifying here?" in that the question was perfectly legitimate cross-examination as to Frank's interest in the outcome in the trial.

The record indicates that during cross-examination of Frank by appellant, the following transpired:

[APPELLANT]: ... Let me ask you what you hope to accomplish by testifying here?

[PROSECUTOR]: Judge, that's entirely argumentative, I object.

THE COURT: Sustained.

[APPELLANT]: I pass the witness, Your Honor.

[PROSECUTOR]: I don't have any further questions, Judge.

This objection apparently is to the form of the question, not to its substance, and the trial court did not prevent further questioning about her motive, if any, in testifying. See *State v. Whitfield*, 837 S.W.2d 503, 511[13] (Mo. banc 1992). Point denied.

■ In his fourteenth point, appellant asserts that the trial court erred in accepting appellant's waiver of the right to counsel in that the waiver was involuntary inasmuch as the waiver was the product of justifiable dissatisfaction with appointed counsel and appellant did not have his eyes open in that appellant was unaware that he would not be afforded a reasonable opportunity to prepare for trial or that he would have no control over his defense and therefore, appellant was denied due process.

For a waiver of counsel to be effective, due process requires that the waiver be made knowingly and intelligently. *State v. Hunter*, 840 S.W.2d 850, 857[1] (Mo. banc 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3047, 125 L.Ed.2d 732 (1993). A defendant need not have the skills and experience of a lawyer to completely and intelligently choose self-representation. *Wilkins v. State*, 802 S.W.2d 491, 501[17] (Mo. banc 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 131, 116 L.Ed.2d 98 (1991). The defendant's knowledge of all relevant facts need not appear on the trial record and the court may properly consider the defendant's background, experience and conduct and such factors as involvement in previous criminal trials and representation by counsel before trial. *State v. Gilmore*, 697 S.W.2d 172, 174–75[7] (Mo. banc 1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986).

At the June 3, 1991 hearing concerning appellant's motion to proceed *pro se* filed May 31, 1991, the trial court found that based on appellant's responses to the court's questions, appellant had voluntarily and knowingly waived his right to counsel, and ordered that the office of public defender make available to appellant resources to permit him to conduct trial preparation. At the June 7, 1991 hearing, the trial court, after questioning appellant, found that his June 3, 1991 decision to waive counsel was not free and voluntary, and ordered that the public defender's office represent him. At the July 3, 1991 hearing, the trial court refused to reconsider appellant's motion to appear *pro se* as appellant had requested. On August 26, 1991, the cause was set for trial on September 3, 1991. At the August 28, 1991 hearing, the trial court granted appellant's motion for waiver of counsel, and permitted him to proceed *pro se*. At the August 28, 1991 hearing, the following colloquy transpired:

THE COURT: What's important, I guess, is do you still wish to waive your counsel in this—in your trial?

THE [APPELLANT]: Absolutely, Your Honor.

THE COURT: What is this, an assault first degree case?

THE [APPELLANT]: Yes, Your Honor.

THE COURT: And I've looked at your motion and read it, and you've got all the details in your motion, which is comprised of thirty-two paragraphs, which is signed and sworn to by you. And these paragraphs include all the detailed information which is required for a waiver, specifically Chapter 600 I believe it is there's a waiver which I guess you followed that. We have a written one here also which I'll let you look over which basically says the same information.

While you're looking that over, let me go through some warnings I have to give you according to the case law with respect to representing yourself. That is that self-representation of yourself in a case such as this, or really in any case, but particularly in a case such as this which is serious, carries a punishment of up to thirty years or life, is unwise according to the cases. Practically speaking, I think it's extremely unwise. I can't even recall anyone that ever represented himself that was ever acquitted. I'm not telling you what to do. I'm just giving you this advice. You can take it for what you think it's worth.

You also should be informed there's not going to be any special indulgence shown to you by the Court by the fact you're representing yourself. You have to follow established rules of law. And that the prosecutor will be an experienced attorney. In your case I'm not sure who the prosecutor is. Do you know who it is?

THE [APPELLANT]: Mr. Lord.

THE COURT: Mr. Lord, who is an experienced attorney. He's been with the Prosecutor's Office I'm sure for about ten years or so. Also I'm supposed to inquire into your background to do this, not only waive your right to have an attorney but to represent yourself. What's your educational background, sir?

THE [APPELLANT]: I have an Associate of Arts Degree from the University of—it was the College in Baytown, Texas, and further studies at the University of Houston, Clear Lake.

THE COURT: So you have an undergraduate degree?

THE [APPELLANT]: Yes, Your Honor.

THE COURT: And some additional studies. Do you have anything along the lines that would help you specifically in—any formal education along the legal lines?

THE [APPELLANT]: I have vast experience, Your Honor.

THE COURT: How many times have you been convicted?

THE [APPELLANT]: Convicted of a crime?

THE COURT: Right.

THE [APPELLANT]: Several.

THE COURT: Okay. That's what you're referring to, I take it, is that right?

THE [APPELLANT]: No, Your Honor.

THE COURT: What are you referring to then?

THE [APPELLANT]: I'm referring to having represented myself in a variety of proceedings.

THE COURT: They're criminal proceedings. I take it?

THE [APPELLANT]: Both civil and criminal.

THE COURT: These proceedings—there have been some criminal proceedings you have represented yourself on though?

THE [APPELLANT]: Yes, Your Honor.

THE COURT: Is that in this state or a different state?

THE [APPELLANT]: State of Texas.

THE COURT: How long ago was that?

THE [APPELLANT]: Most recently I concluded all but an appeal in June of 1990.

THE COURT: You worked on an actual trial of yourself? What proceedings did you represent yourself on?

THE [APPELLANT]: I represented myself on a criminal contempt in Dallas County, an arson case in Dallas County, an assault case in Arrant County.

THE COURT: Did any of those go to trial?

THE [APPELLANT]: The assault case went to trial.

THE COURT: And you were convicted?

THE [APPELLANT]: Yes.

THE COURT: And you're pursuing an appeal?

THE [APPELLANT]: I'm pursuing an appeal.

THE COURT: I have to make you aware on the record, which I'm sure you know, that attorneys can be afforded to you at no cost, and they have been afforded to you. I think these two attorneys who are present are not the first attorneys who were assigned to you, is that right.

THE [APPELLANT]: Charlie Maas preceded them.

THE COURT: You've had three public defenders?

THE [APPELLANT]: Correct.

THE COURT: And you know they are available and you don't have to pay for them obviously?

THE [APPELLANT]: Correct, Your Honor.

＊　　＊　　＊　　·＊　　＊　　＊

THE COURT: And you ... should be aware that you can't—if you're convicted as a result of your trial, you can't use the defense, which is often times used, of inadequacy of counsel when you're defending yourself. You understand that?

THE [APPELLANT]: Yes, Your Honor.

THE COURT: That's not available to you. All right. After all we've talked about, you still want to proceed then—

THE [APPELLANT]: Most definitely.

THE COURT: —by yourself, is that right?

THE [APPELLANT]: Yes.

From the preceding excerpt, we find that appellant knowingly and intelligently waived his right to counsel. Point denied.·

In his fifteenth point, appellant claims that the trial court erred in denying appellant's request for substitution of appointed counsel inasmuch as appellant and counsel were embroiled in an irreconcilable conflict as to the defense and appellant's right to testify, resulting in a complete breakdown in communication between counsel and appellant, and therefore, appellant's right to counsel and right to due process of law were violated.

Citing the July 3, 1991 hearing, appellant argues that he advised the trial court that he was dissatisfied with his counsel. Citing the same hearing, appellant asserts that the trial court declined to consider substitution of counsel, but appellant persisted in stating his grounds for dissatisfaction of counsel.

The record indicates that at the July 3, 1991 hearing, appellant did not request a substitution of appointed counsel, and that the trial court did not decline to hear such a motion. In any event, the record does indicate that on July 9, 1991, appellant filed a motion to substitute counsel. The record shows that the trial court did not rule on this motion, but the court granted his motion to proceed *pro se* on August 28, 1991. In light of the fact that the court allowed appellant to proceed *pro se*, we do not see how appellant was prejudiced. Point denied.

■ In his sixteenth point, appellant claims the trial court erred in committing to the discretion of the public defender what, if any, investigation should be conducted on appellant's behalf, what, if any, evidence to procure for trial, which witnesses to depose, and whether to secure the attendance of witnesses for the defense, including expert witnesses, thereby denying appellant his right to self-representation.

At the August 28, 1991 hearing, the following discussion occurred concerning the services which the public defender's office would make available to appellant:

THE COURT: Well, I—I don't have any really direct control over how their office is run as far as how they do their workloads. I am appointing them to assist you, so they should be made available to the extent that they can help you. I don't know what their schedules are or what they're doing. I can't look into that. But I do think since you are indigent—you obviously are indigent or they wouldn't have been representing you to begin with. And you're still maintaining that you're indigent, is that right?

[APPELLANT]: Yes, Your Honor.

THE COURT: I'll make them available to the extent they can help you. And also more specifically these attorneys to the extent they can help you during the trial. You'll have to discuss that with Judge O'Brien so you can work out a plan where you want them to stay, if you want them in a courtroom or not. I'm not appointing them to the extent you want to use them, all right?

[APPELLANT]: Yes, Your Honor.

THE COURT: You can discuss with them what your investigative desires are. And I can't guarantee that they can do it or they can't do it, but at least they'll be available to try and accommodate you, all right? That will complete the record then.

At the September 4 hearing immediately before the trial, the following conversation transpired between the court and the public defender:

THE COURT: If there are any witnesses available, you will see to it that they get subpoenaed on [appellant's] behalf?

MS. McMAHON: Yes, Your Honor.

THE COURT: Within the ordinary course of the legal practice?

MS. McMAHON: Yes, Your Honor.

＊　　＊　　＊　　＊　　＊　　＊

[APPELLANT]: I'm asking the court to compel the public defender's office to do the right thing and try to find my witnesses.

＊　　＊　　＊　　＊　　＊　　＊

THE COURT: ... That request, whatever that request is at this time is denied.

The record indicates that the trial court did not deny appellant his right to self-representation by providing him with the services of the public defender's office to assist him in preparing his case for trial because the public defender's office was ordered to provide services to him to the extent that he wanted to use them. Point denied.

■ In his seventeenth point, appellant claims that the trial court erred in admitting into evidence over appellant's objection exhibit nine, a receipt for a motel room, in that exhibit nine is inadmissible hearsay inasmuch as the state failed to bring exhibit nine within

any exception to the general prohibition against hearsay and appellant was prejudiced by the erroneous admission of exhibit nine in that the jury requested exhibit nine during deliberations and therefore, appellant was denied confrontation and due process.

The record indicates that appellant did not object to the admission of the motel room receipt when it was admitted at trial. Therefore, even if the receipt is inadmissible hearsay, the jury could properly consider it, *State v. Wallace*, 825 S.W.2d 626, 632[10] (Mo.App. 1992), and its admission was not plain error for the same reason. See *State v. Lewis*, 809 S.W.2d 878, 879[3] (Mo.App.1991). Further, appellant does not dispute that he and Frank stayed at the motel when the assault occurred. In any event, Frank and Officer Zinselmeier testified that appellant stayed at the motel on November 29, 1989, thus appellant was not prejudiced. See *State v. Gustin*, 826 S.W.2d 409, 418–19 (Mo.App.1992). Point denied.

In his eighteenth point, appellant asserts that the trial court erred in denying his request for two out-of-state witnesses. Appellant asserts that he moved the trial court to issue a certificate pursuant to the Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings (Uniform Law). § 491.400 et seq.

Under the Uniform Law, the burden is on the party seeking the presence of the witness to establish the materiality and necessity of the witness. *State v. Sykes*, 611 S.W.2d 278, 280[1] (Mo.App.1980). That party should present evidence by affidavit of the witness or in some other way establish the testimony is material and necessary. *Id.* at 280–81. Even when a showing of materiality and necessity is made, the granting of the application is largely within the discretion of the trial court, for the statute provides the trial judge 'may' issue the certificate. *Id.* at 281.

The record indicates that the public defender's office attempted to locate the two out-of-state witnesses but was unsuccessful. Further, appellant did not present any affidavits or competent evidence to show that the two witnesses were material and necessary. Point denied.

Finally, in his nineteenth point, appellant opines that the trial court erred in overruling appellant's objection to instruction number 4 (reasonable doubt) in that the instruction lowers the state's burden of proof from proof beyond a reasonable doubt to merely firmly convinced and changes the verdict from an objective judgment based on the evidence to a purely subjective judgment, thereby denying appellant due process.

We have rejected this argument "too many times to mention." *State v. Roe*, 845 S.W.2d 601, 607 (Mo.App.1992).

Judgment affirmed.

PUDLOWSKI and KAROHL, JJ., concur.